## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WILLIE EVANS, as Executor of the Estate of Marie R. Evans, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. 04-11840 (MLW) |
| LORILLARD TOBACCO COMPANY, GARBER BROS., INC., GEORGE MELHADO AND COMPANY, and FRANKLIN WHOLESALERS INC., | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANT FRANKLIN WHOLESALERS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND FOR AWARD OF ATTORNEYS' FEES AND COSTS

Franklin Wholesalers, Inc. ("Franklin") submits this memorandum in support of its opposition to Plaintiff's Motion to Remand and for Award of Attorneys' Fees and Costs on the grounds that Franklin was fraudulently joined in this action for the specific purpose of defeating this Court's jurisdiction over this matter. Because its joinder is fraudulent, Franklin should be dropped from this action pursuant to Fed. R. Civ. P. 21 and the Motion should be denied.

### INTRODUCTION

In an effort to avoid federal jurisdiction, Plaintiff, Willie Evans, as Executor of the Estate of Marie R. Evans ("Plaintiff") asserts a host of meritless claims against Franklin as one of several possible tobacco distributors that Plaintiff claims "distributed Newport cigarettes to stores in the Boston area, including neighborhoods in which Marie Evans ["Ms. Evans"] lived and worked, during the time that Marie Evans was purchasing and smoking Newport cigarettes."

See Complaint at ¶ 5. Franklin, whom the Plaintiffs identify by name only three times in their Complaint (outside of the caption), is not owned or controlled by Lorillard Tobacco Company ("Lorillard"), the manufacturer of the Newport cigarettes that Ms. Evans allegedly smoked for her entire adult life. None of the allegations with respect to Franklin's actual conduct -- that is, that Franklin distributed in sealed packages to stores owned by its parent The Stop & Shop Supermarket Company LLC ("Stop & Shop"), a product that is lawfully available and not even alleged to be uniquely unsafe -- are sufficient to support a claim against Franklin. Under the circumstances, it is plain that Franklin has been fraudulently joined for one purpose and one purpose only: to defeat diversity jurisdiction so that Plaintiff can force Lorillard to litigate Plaintiff's claims against it in state court. The doctrine of fraudulent joinder blocks this maneuver, however. Plaintiff's Motion to Remand, and likewise for an award of fees and costs, should be denied, and Franklin should be dropped from this action.[1]

## PROCEDURAL AND FACTUAL BACKGROUND

### A.    Franklin

Franklin is a Massachusetts corporation with its principal place of business in Quincy, Massachusetts. See Affidavit of Peter Hettinger (the "Hettinger Aff.") at ¶ 2. From time to time Franklin has distributed tobacco products to certain retail stores owned by The Stop & Shop Supermarket Company LLC ("Stop & Shop"). At no time has Franklin ever distributed tobacco products to any retail store not owned by Stop & Shop. See id. With the exception of affixing tax stamps to the products it distributes, Franklin's sole conduct with respect to these tobacco products has consisted of distributing the product to certain retail stores owned by Stop & Shop. See id.

---

[1] In addition to submitting this memorandum of law in opposition to Plaintiffs' Motion to Remand, Franklin also joins in, and incorporates herein by reference, Lorillard Tobacco Company's, Garber Bros., Inc.'s and George Melhado and Company's Opposition to Plaintiff's Motion to Remand.

As plaintiff concedes, Franklin does not manufacture cigarettes or any other tobacco product; nor has it ever done so.  <u>See</u> Hettinger Aff. at ¶ 4.  In addition, Franklin does not package cigarettes or any other tobacco product for sale to consumers; nor has it ever done so. <u>See id.</u>

The tobacco products Franklin distributes are obtained in sealed packages from various manufacturers, including Lorillard.  <u>See</u> Hettinger Aff. at ¶ 5.  Franklin does not alter in any way the packaged cigarette products delivered to it by the manufacturer.  <u>See id.</u>

Franklin does not direct, finance, or otherwise participate in any advertising campaign related to any tobacco product, including cigarettes.  <u>See</u> Hettinger Aff. at ¶ 6.  Neither Franklin nor any of its parents or predecessors has ever done so.  <u>See id.</u> Franklin has never participated in any tobacco giveaway promotions or other marketing campaigns the focus of which is to give free cigarettes to consumers.  Neither Franklin nor any of its parents or predecessors has ever done so.  <u>See id.</u> at ¶ 7.

Franklin has never obtained information from any cigarette manufacturer or distributor that is not otherwise publicly available about any of the following: (i) the composition of the cigarettes manufactured and distributed by such manufacturer; (ii) the results of any research or studies concerning or relating to the health effects of smoking cigarettes or any other tobacco product; or (iii) the results of any research or studies concerning or relating to the addictive qualities, if any, of the tobacco used in cigarettes.  <u>See</u> Hettinger Aff. at ¶ 8.

Franklin has never participated in the development by any cigarette manufacturer or any of the trade groups of any marketing strategy or campaign or advertising strategy or campaign. <u>See</u> Hettinger Aff. at ¶ 9.  Nor has Franklin ever received any access to the internal research reports, marketing strategies and/or manufacturing strategies of any cigarette manufacturer or

any of the trade organizations. <u>See id.</u> Franklin has never participated in or received access to any information regarding the marketing of cigarettes, including Newport cigarettes, to the African American community, or any other ethnic, racial or religious group. <u>See id.</u> at ¶ 10.

Franklin has not made any representations concerning the health effects of cigarette smoking, other than distributing cigarette packages with the pre-printed health warnings required by federal law. <u>See</u> Hettinger Aff. at ¶ 11. Franklin has never authorized any of its employees, agents or representatives to make any such representations and does not have any information that any such representations were made. <u>See id.</u>

**B.      <u>Ms. Evans' 2002 Malpractice Action</u>**

In 2002, Ms. Evans filed suit against her primary care physician for failure to properly diagnose Ms. Evans' lung cancer. <u>See</u> <u>Marie R. Evans v. Marc L. Halper, M.D.</u>, Suffolk Superior Court, CA No 02-0911 (the "Malpractice Action"). The Malpractice Action is simultaneously pending in State Court. In videotaped deposition testimony given by Ms. Evans prior to her death, she testified that in the "early years" she obtained cigarettes from the following sources: 1) stealing or "bumming" cigarettes from friends and family; 2) at alleged Newport cigarette giveaways in the Roxbury section of Boston, and the nearby train station; and 3) by purchasing cigarettes at two local corner stores named "Johnny's" and "Moe's." <u>See</u> Deposition of Marie Evans, dated May 28, 2002, at pp. 26-29, attached to Affidavit of Counsel ("Counsel Aff.") at <u>Tab A</u>. Franklin did not participate or in any way contribute to the cigarette giveaways, nor did Franklin distribute cigarettes to the only retail locations identified by Ms. Evans in sworn testimony.

Franklin is informed that Plaintiff conducted pre-suit discovery and provided notice to Lorillard. Plaintiff made Ms. Evans available for deposition and provided no notice to Franklin

of these events. In addition, certain medical records from the malpractice action were produced to Lorillard before this case was filed. No such records were made available to Franklin.

**C.    The State Court Action**

Plaintiff filed this action in Suffolk Superior Court on or about June 28, 2004. Plaintiff's Complaint is 22 pages long, contains 90 paragraphs, and includes eight separate counts. In paragraph 5 of the Complaint, Plaintiff alleges that "Defendants Garber Bros., Inc., George Melhado and Company and [Franklin] distributed Newport cigarettes to stores in the Boston area, including neighborhoods in which Marie Evans lived and worked, during the time that Marie Evans was purchasing and smoking Newport cigarettes." With the exception of the case caption and the identification of the parties, this is the only occasion in the entire Complaint that Franklin is specifically identified by name.

The basic theory of the Complaint is that cigarettes are dangerous and addictive, that Lorillard has known that cigarettes are dangerous and addictive for decades, and that during this time Lorillard misled consumers about the dangers associated with cigarette smoking, both by making affirmative misstatements and by omission. Further, the Complaint alleges that Lorillard specifically targeted African-Americans in this "campaign of disinformation," and accomplished this targeting by conducting Newport cigarette giveaways in African-American communities in the Boston area. Of the Complaint's eight counts, four run against only Lorillard (Count I ("Fraud and Misrepresentation"); Count II ("Voluntary Undertaking of a Duty"); Count IV ("Public Nuisance"); and Count V ("Battery")). Four additional counts purport to be asserted against all defendants, including Franklin: Count III ("Breach of Warranty"); Count VI ("Violation of G.L. c. 93A, Section 9"); Count VII ("Negligence"); and Count VIII ("Wrongful Death").

The Complaint contains not even a single specific factual allegation concerning Franklin's conduct. In particular, the Complaint lacks any specific allegation that Ms. Evans, the deceased smoker, actually purchased any cigarettes at any store to which Franklin distributed cigarettes (a critical element of each of Plaintiff's substantive claims against Franklin). Likewise, Plaintiff fails to allege that any Franklin officer or employee ever made any statement to Ms. Evans about any cigarettes she allegedly purchased at a store supplied by Franklin (a critical element of Plaintiff's warranty claims). Moreover, although the Complaint recites at length and in great detail the history of Lorillard's alleged research into, and knowledge concerning, the health and safety issues related to the use of cigarettes, Plaintiff does not allege that Franklin or any other distributor actually participated in, or had knowledge of the results of, that research. Nor does Plaintiff specifically allege that Franklin developed or carried out with Lorillard the alleged plan to target African-American consumers with Newport cigarettes.

### D. <u>Procedure In This Court</u>

On August 24, 2004, all defendants removed this action to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446 as all proper parties are completely diverse.[2]  On September 1, 2004, after conferring with Plaintiff's counsel, defendants filed the Assented to Motion to Enlarge Time to file a responsive pleading pending resolution of a motion to remand. On September 3, 2004, Plaintiff filed the instant motion.

## <u>SUMMARY OF ARGUMENT</u>

Plaintiff's Motion should be denied because, but for the fraudulent joinder of Franklin (and the other non-diverse distributor defendants) as a defendant, this Court has subject matter

---

[2]  Franklin joined in the removal because it was fraudulently joined. Franklin reserved all rights, including but not limited to, defenses and objections as to venue, personal and/or subject matter jurisdiction, and service of process, and the filing of the Notice of Removal was expressly subject to and without waiver of any defenses or objections.

jurisdiction over this matter under 42 U.S.C. § 1332. Therefore, Franklin should be dropped from this action pursuant to Fed. R. Civ. P. 21 and the Motion to Remand and for Award of Attorneys' Fees and Costs should be denied.

Under the doctrine of "fraudulent joinder," federal courts disregard defendants fraudulently joined by plaintiffs in order to avoid diversity. See Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875, 877 (1st Cir. 1983). "The linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact." Mills v. Allegiance Healthcare Corp., 178 F.Supp.2d 1, 5 (D. Mass. 2001)(fraudulent joinder found where plaintiffs failed to allege or provide evidence that plaintiff was exposed to allegedly defective product actually distributed by defendant). To establish "fraudulent joinder," defendants need make one of two alternative showings. First, they may show that "the plaintiff does not intend to secure a judgment against the defendant." See, e.g., Poultry & Beef of Puerto Rico, Inc. v. Smithfield Packing Co., 635 F.Supp. 1070, 1071 (D.P.R. 1986). Alternatively, defendants may show "that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court." Mills, supra, 261 F.Supp. 2d at 5. Here, Defendants have satisfied both standards. Plaintiff does not intend to obtain a judgment against Franklin; rather, Franklin was joined as a Defendant solely for the purpose of defeating diversity jurisdiction. See Point I.A., infra. In addition, there is no possibility that, based on the Complaint -- bereft as it is of any specific allegations concerning Franklin's conduct -- Plaintiff can state a cause of action against Franklin or that the joinder of Franklin has a reasonable basis in fact and law. See Point I.B., infra. Therefore, Franklin should be dropped from this action.

## I.    FRANKLIN IS NOT A TRUE PARTY IN INTEREST AND HAS BEEN FRAUDULENTLY JOINED TO DEFEAT DIVERSITY AND DEPRIVE LORILLARD ACCESS TO THIS COURT

The focus of Plaintiff's Complaint is Lorillard's conduct in designing, manufacturing and distributing allegedly defective and harmful Newport cigarettes to consumers such as the deceased, Ms. Evans.  Complaint at ¶ 34-37.  Although Plaintiff asserts broadly that Franklin is likewise liable for this conduct (see id.), the Complaint fails to set forth any specific assertions concerning Franklin's conduct to support that conclusory allegation.  Plaintiff's sketchy and conclusory allegations concerning Franklin's purported activities are persuasive evidence that Franklin was joined as a straw defendant merely for the purpose of defeating diversity jurisdiction.  See Mills, supra, 168 F.Supp.2d at 5.  Moreover, it is significant that Plaintiff failed to include Franklin in pre-suit discovery, including the deposition of Ms. Evans.  Only Lorillard was given notice of that pre-suit discovery.

### A.    PLAINTIFF DOES NOT INTEND TO OBTAIN A JUDGMENT AGAINST FRANKLIN

Fraudulent joinder exists where the plaintiff lacks any real intent to secure a judgment against the straw defendants, even if the complaint asserts a colorable claim against them.  See Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996) *overruled on other grounds by* Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000); Alexander v. Electronic Data Systems Corp., 870 F.Supp. 749, 752 (E.D. Mich. 1994)("Joinder of parties is fraudulent if there is no intent to obtain a joint judgment"); and Scientific Computers, Inc. v. Edudata Corp., 596 F.Supp. 1290, 1292-93 (D. Minn. 1984)(and cases cited therein)("Joinder of parties is a sham if the plaintiff has no real intent to obtain a joint judgment.").  In this case, there are at least

three reasons to conclude that Plaintiff lacks any real interest in securing a judgment against Franklin.[3]

First, Plaintiff has failed to specifically allege that Franklin actually distributed cigarettes to any venue that, in turn, sold any cigarettes to the decedent, and included only general, conclusory, and *de minimis* allegations against Franklin as one of three "distribution defendants." These skeletal allegations contrast strikingly with the detailed allegations against Lorillard. In similar circumstances, other courts have concluded that similarly situated defendants have been fraudulently joined. See, e.g., Freeman v. Unisys Corp., 870 F.Supp. 169, 172 (E.D. Mich. 1994) (in case against corporate defendant, fraudulent joinder exists where "plaintiff makes no specific allegations against either defendant"); and Alexander, supra, 870 F.Supp. at 753 (fraudulent joinder where "plaintiff's complaint makes no allegations of specific actions of either [individual] defendant").

Second, Plaintiff's lack of intention to pursue his purported claims against Franklin is betrayed by his election to sue only three of untold number of distributors who have distributed cigarettes to retailers selling cigarettes to Massachusetts consumers during the past 47 years (according to the Complaint, Ms. Evans began smoking cigarettes when she was a young teenager (see Complaint at ¶ 16-17)). Plaintiff's inclusion of token members of the secondary class of distributors is a hallmark of fraudulent joinder relied upon by other Courts in rejecting efforts to destroy diversity jurisdiction. See Tapscott, supra, 77 F.3d at 1360 (fraudulent joinder of 'resident [secondary] defendants have no real connection with the controversy involving the putative 'merchant' class action"); Scientific Computers, supra, 870 F.Supp. at 1292-93

---

[3] In his Motion, Plaintiff seeks to bolster his argument that he intended to seek judgment against Franklin and the distribution defendants by pointing to the "extensive discovery requests" served simultaneously with the Complaint. Motion to Remand at p. 9. In fact, however, the discovery propounded amounts to a "fishing expedition" that Plaintiff hopes will result in some shred of evidence linking Franklin to Ms. Evans' injuries. As is amply supported by the Hettinger Affidavit, no such evidence exits because there is no such connection.

(fraudulent joinder where single in-state defendant was indistinguishable from other brokers or market makers who could have been named by plaintiffs); and <u>Alexander</u>, <u>supra</u>, 870 F.Supp. at 752 (in employment suit, fraudulent joinder of individuals who interviewed plaintiff, where "conspicuously, the other members of the interview team were not named as defendants").

Third, Plaintiff's actions pre-suit suggest that he has no real intention to recover against Franklin. In fact, Plaintiff conducted rather extensive pre-suit discovery, including making Ms. Evans available for deposition and providing documents evidencing Ms. Evans medical injuries. This discovery was made available only to Lorillard and not to Franklin. Franklin was not given the opportunity to attend Ms. Evans deposition and cross-examine her in support of its defense in this matter. The logical conclusion to be drawn from this fact is that Plaintiff did not consider Franklin to be responsible for Ms. Evans' illness. Plaintiff's lack of attention to Franklin in its pre-suit conduct is echoed by the Complaint, which further demonstrates that Franklin is not the true target of Plaintiff's lawsuit. The allegations against Franklin in the Complaint are so illusory that it appears that Franklin was added to this action as an afterthought.

Plaintiff has asserted claims against Franklin solely for the purpose of defeating Lorillard's right to adjudicate this action in this Court. Because Franklin has been fraudulently joined in this action, the motion to remand should be denied.

## B.  THE COMPLAINT FAILS TO STATE ANY COLORABLE CLAIMS AGAINST FRANKLIN

Only four of the Complaint's eights counts are asserted against Franklin: Count III ("Breach of Warranty"); Count VI ("Violation of G.L. c. 93A, Section 9"); Count VII ("Negligence"); and Count VIII ("Wrongful Death"). The allegations in the Complaint fail to state a colorable claim against Franklin under each of these theories of liability. Therefore,

Franklin is not a proper party to this case and the action as to Franklin should be ended with prejudice.

### 1.    The Complaint Fails To Satisfy The Basic Requirements Of Notice Pleading

The Complaint makes one general allegation of fact upon which it bases all claims against Franklin. Paragraph 5 alleges: "Defendants Garber Bros., Inc., George Melhado & Company and Franklin Wholesalers, Inc. distributed Newport cigarettes to stores in the Boston area, including neighborhoods in which Marie Evans lived and worked, during the time that Marie Evans was purchasing and smoking Newport cigarettes." See Complaint at ¶ 5.[4] This allegation, standing alone, is not sufficient to satisfy even the minimal pleading requirements contained in Fed.R.Civ. P. 8(a)(2).

A plaintiff cannot rely on conclusions and omit a description of the alleged "wrongful" conduct. See Resolution Trust Corp. v. Driscoll, 985 F.2d 44, 48 (1st Cir. 1993). Given the lack of concrete factual allegations in the Complaint, Franklin can speculate that Plaintiff included Franklin, and the two other distributor defendants for that matter, as defendants based solely on their vaguely alleged presence in the chain of cigarette distribution. However, a distributor's mere presence in the chain does not satisfy the substantive element of common law claims and, therefore, Plaintiff's Complaint fails to state any colorable claims for relief against Franklin. See Masepohl v. American Tobacco Co., Inc., 974 F.Supp. 1245 (D. Minn. 1997)(finding that mere

---

[4] Furthermore, if the Court were to look outside of the four corners of the Complaint to the videotaped testimony given by the decedent, Ms. Evans, prior to her death, which the Court is entitled to do in this instance, see e.g., Federal Beef Processors, Inc., 851 F.Supp. 1430, 1436 (D. S.Dak. 1994); Masepohl v. American Tobacco Co., Inc., 974 F.Supp. 1245 (D. Minn. 1997), the Court would learn that Ms. Evans did not give any testimony that would link her purchase and consumption of Newport cigarettes in any way to Franklin. Ms. Evans testified that she purchased Newport cigarettes from two local corner stores named "Johnny's" and "Moe's," both located on Albany Street in Roxbury. Franklin does not and never has distributed cigarettes or other tobacco products to either location. See Hettinger Aff. at ¶ 3. Therefore, plaintiff is unable to point to any facts that would support any causal connection between Franklin's distribution activities and Ms. Evans' injuries.

presence in the chain of distribution, without more, does not satisfy elements of each claim, thereby, requiring the dismissal of those defendants fraudulently joined).

Because Plaintiff does not specify a single wrongful act by Franklin, all four counts against Franklin contained in the Complaint fall far short of the minimal pleading standard, which requires " a short plain statement of the claim *showing that the pleader is entitled to relief.*" Fed.R.Civ.P. 8(a)(2)(emphasis added).

## 2. The Complaint Fails to Satisfy the "Identification" Element Fundamental to All Product Liability Claims in Massachusetts

The underlying basis for each claim asserted by Plaintiff in the Complaint is the design, manufacture, distribution and sale of a dangerous product. Pursuant to Massachusetts law "identification of the party responsible for causing injury to another is a long-standing prerequisite to a successful negligence action. . . . This requirement serves two purposes: it separates wrongdoers from innocent actors, and also ensures that wrongdoers are held liable only for the harm that they have caused." Payton v. Abbott Labs, 386 Mass. 540, 557 (1982); see also Mathers v. Midland-Ross Corp., 403 Mass. 688, 690-91 (1989).

In his Complaint, Plaintiff fails to allege 1) that Franklin was the exclusive distributor of Newport cigarettes in the areas where Ms. Evans lived and worked; 2) that Franklin distributed cigarettes to the only two retailers where Ms. Evans testified to having purchased Newport cigarettes; and 3) that Ms. Evans purchased cigarettes at any location to which Franklin distributed Newport cigarettes. In fact, the sole evidence relating to Franklin's distribution practices directly contradicts any claim to the contrary. See Hettinger Aff. at ¶¶ 2 and 3.

Lacking any evidence of a specific relationship between Franklin's distribution activities and Ms. Evan's purchase and consumption of Newport cigarettes, Plaintiff instead relies on Franklin's position in the chain of distribution of tobacco products generally as a basis for his

Complaint. As in <u>Mills v. Allegiance Healthcare Corp.</u>, 178 F. Supp. 2d 1, 7 (D. Mass 2001), however, the failure to properly identify any connection between the plaintiff and the defendant's product is fatal to a products liability claim, and the Court, therefore, found that the distributor defendant was fraudulently joined in that action. <u>See</u> <u>also</u>, <u>Masepohl</u>, 974 F.Supp. at 1246(presence in chain of distribution insufficient). In <u>Mills</u>, the court noted "[p]laintiffs have virtually no possibility of success . . . because they have failed to allege or provide evidence that Plaintiff was even exposed to latex gloves distributed by Claflin." 178 F.Supp.2d at 8. Likewise, the Plaintiff here has not even alleged that Franklin distributed cigarettes to the retailers from which Ms. Evans made her purchases.

3.    <u>Count VII Of The Complaint Fails To State A Claim For Negligence</u>

Plaintiff's negligence claim against Franklin (Count VII) is based on two alternative theories: (i) a failure to warn Ms. Evans about the dangers of smoking cigarettes; and (ii) the defective design, development, testing, marketing, promotion, packaging, sale and or distribution of Newport cigarettes. <u>See</u> Complaint at ¶ 84.b (failure to warn); and ¶ 84.a (defective design and manufacture). Although Plaintiff asserts in the conclusory prefatory language to Paragraph 84 that "Defendants breached their duty to exercise reasonable care in numerous respects," several of the specific allegations contained in the individual subparagraphs are directed solely at Lorillard and the remaining subparagraphs fail to allege sufficient facts to establish that Franklin was negligent. The conclusory allegations against Franklin underscore the futility of Plaintiff's efforts to ensnare Franklin. The Complaint fails to state a claim under either theory, thereby establishing that Franklin was fraudulently joined.

**(a)    Plaintiff Has No Basis For A Failure-To-Warn Claim Against Franklin**

(1)    Franklin Had No Duty To Warn

Franklin did not have any duty to warn Ms. Evans of the health hazards posed by smoking cigarettes. Under Massachusetts law, "there is no duty to warn of dangers that are obvious to nearly all." Johnson v. Brown & Williamson Tobacco Corp., 122 F.Supp.2d 194, 204 (2000) (citing, Colter v. Barber-Greene Co., 403 Mass. 50, 59 (1988). In addition, "[g]enerally there is no duty to warn of danger, unless the person on whom that duty rests has some reason to suppose a warning is needed." Carney v. Bereault, 348 Mass. 502, 506, (1965). Finally, there is no duty to warn when the parties share an equal base of knowledge. See Slate v. Bethlehem Steel Corp., 400 Mass. 378, 381-382 (1987).

The allegations in the Complaint directed against Franklin, together with the Hettinger Affidavit submitted herewith, make plain that at all times relevant to this action, prior to 1969[5]: (i) Franklin did not have any knowledge about cigarettes not generally known to the public; and (ii) Franklin did not have any "reason to suppose a warning" was needed under the circumstances. That there may be some health and safety concerns related to smoking cigarettes has been widely publicized and widely known since at least the turn of this century. See Wolf v. Philip Morris, Inc., et al., Norfolk Superior Court, Civil Action No. 99-1260-B (June 23, 2000 memorandum opinion dismissing smoker's failure to warn claim against cigarette manufacturers) (Lauriat, J.) (attached Tab A). As the Hettinger Affidavit makes plain, however, Franklin has

---

[5] To the extent that Plaintiff's failure to warn claims are premised on conduct after 1969, those claims have been preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331, et seq. See Cipollone v. Liggett Group, Inc., 505 U.S. 504, 523-25 (1992). According to Plaintiff's Complaint, Ms. Evans allegedly began smoking Newport cigarettes in or about 1960. See Complaint at ¶ 17.

never obtained from Lorillard or any other source any information related to the health and safety of using cigarettes that is not generally known to the public.  See Hettinger Aff. at ¶ 8.[6]

(2)    Franklin Was Not In A Position To Warn Consumers

In order to establish that Franklin failed to warn Ms. Evans of the health hazards, including addiction, of cigarettes, Plaintiff must establish that Franklin was in a position to give such warnings to Ms. Evans.  Plaintiff makes no allegation that Franklin had any contact with consumers or took any steps to communicate with consumers about the products it distributed. On the contrary, the evidence presented does not in any way suggest that Franklin was in a position to warn Ms. Evans of the alleged defects.  In videotaped deposition testimony given by Ms. Evans prior to her death, she testified that in the "early years" she obtained cigarettes from the following sources: 1) stealing or "bumming" cigarettes from friends and family; 2) at alleged Newport cigarette giveaways in and around her home and the nearby train station; and 3) by purchasing cigarettes at two local corner stores named "Johnny's" and "Moe's."  See Deposition of Marie Evans, dated May 28, 2002, at pp. 26-29, Koski Aff., Tab A.  Franklin did not participate or in any way contribute to the cigarette giveaways, nor did Franklin distribute cigarettes to either retail location identified by Ms. Evans in sworn testimony. See Hettinger Aff. at ¶¶ 3 and 7. Therefore, Franklin was not in a position to warn Ms. Evans.  "[T]he pleadings must do more than vaguely assert that the defendant generally failed to warn people, including the plaintiff, of the dangers of smoking.  *Some* facts must be pleaded."  Wajda v. R.J. Reynolds Tobacco Co., 103 F.Supp.2d 29, 33 (D. Mass. 2000)(O'Toole, J.)(citing Vassallo v. Baxter

---

[6] Plaintiff's attempted appeal to emotion in the Motion to Remand at footnote 2, which suggests that the distributors could not have acted in good faith in distributing cigarettes with their known health implications is both improper on its face and not supported in law as the distribution of cigarettes is a legal business activity.

—

Healthcare Corp., 428 Mass 1, 23 (1998). Plaintiff's allegations fail to state a claim against Franklin.

**(b)     Plaintiff's Defective Design Claim Against Franklin Fails
          To State A Claim**

Plaintiff's claim that Franklin is somehow liable for the allegedly defective design and manufacture of the Newport cigarettes consumed by Ms. Evans is equally flawed. To state a defective design claim under Massachusetts law, Plaintiffs must allege and identify a defect that is specific to the particular product consumed by Ms. Evans that rendered that product "unreasonably dangerous" and that is not common to an entire class of products. See Colter v. Barber-Greene Co., 403 Mass. 50, 61-62 (1988). As this Court has noted, "'[g]ood tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful.'" Johnson v. Brown & Williamson Tobacco Corp., 122 F.Supp.2d 194, 205 (D. Mass. 2000) (citing Kotler v. American Tobacco Co., 685 F.Supp. 15, 19-20 (D. Mass. 1988)). "To prevail on a claim that cigarettes were defectively designed a plaintiff must therefore 'plead that the particular tobacco used in the cigarettes consumed was, itself, 'bad'; that is, it deviated from the norm for tobacco in some untoward way.'" Johnson v. Brown & Williamson Tobacco Corp., supra, 122 F.Supp.2d at 205 (citing Herlihy v. R.J. Reynolds Tobacco Co., 1988 WL 73434 (D. Mass. 1988). [7]

According to Plaintiff's Complaint, the cigarettes are defective because "such cigarettes were carcinogenic, addictive, and contained dangerous levels of tar, nicotine and other substances." Complaint at ¶ 60. These are precisely the characteristics shared by all tobacco products. Plaintiffs have failed to allege that the tobacco in the Newport cigarettes that Ms.

---

[7] Plaintiff's design defect claim may also fail under the doctrine of conflict preemption where, as here, Plaintiff seeks to recover against these defendants on the general theory that cigarettes are inherently dangerous. See e.g., Geier v. American Honda Motor Co., 529 U.S. 861, 874 (2000); Insolia v. Philip Morris Inc., 128 F. Supp. 2d 1220 (2000).

Evans allegedly purchased at a location to which Franklin allegedly distributed cigarettes deviated in any way from the norm for tobacco. Accordingly, Plaintiff's defective design claim against Franklin fails.

### 4. Plaintiff's Complaint Fails To State A Claim That Franklin Breached Any Implied Warranty (Count III)

Under Massachusetts law, liability for breach of an implied warranty is consistent with the principles expressed in the Restatement (Second) of Torts Section 402A. See Mass G.L. c. 106, § 2-314; see also Vassallo v. Baxter Healthcare Corp., 428 Mass. 1, 22 (1998). Moreover, "[I]n Massachusetts, claims for defective design based on negligence and breach of warranty are closely related." Johnson v. Brown & Williamson Tobacco Corp., supra, 122 F.Supp.2d at 206. Thus, consistent with Section 402A of the Restatement, Massachusetts law requires a plaintiff to allege and identify a specific defect, not common to an entire class of products, that renders the product "unreasonably dangerous." See Colter v. Barber-Greene Co., 403 Mass. 50, 61-62 (1988).

Plaintiffs have not, and cannot, state a claim for breach of any implied warranty. No allegations have been made that the tobacco in any of the cigarettes Ms. Evans may have purchased from Franklin is in any way different from the tobacco contained in ordinary cigarettes. Accordingly, Ms. Evans has not, and cannot, state a claim for breach of an implied warranty against Franklin.

### 5. Count VI Of The Complaint Fails To State A Claim Under M.G.L. c. 93A

Plaintiff asserts that Franklin committed unfair and deceptive acts and practices in violation of M.G.L. c. 93A in breaching an implied warranty of merchantability. For the reasons set forth in Section I.B.2., Plaintiff's claim for breach of the implied warranty of merchantability fails and, likewise, the claim under Chapter 93A based upon those same baseless allegations

must also fail. <u>See</u> <u>Amari</u> v. <u>Brown & Williamson Tobacco Corp.</u>, 2000 WL 33976544 (D.

Mass. 2000)(93A claim fails because it was based on alleged conspiracy and complaint failed to

plead conspiracy with sufficient particularity).[8]  The Complaint does not allege any additional

facts that would support a claim under Chapter 93A against Franklin.

### 6.   Plaintiff Fails To State A Claim For Wrongful Death

Plaintiff alleges, "Defendants [including Franklin] designed, developed, tested,

manufactured, marketed, packaged, sold, and/or distributed Newport Cigarettes. Defendants'

wrongful conduct as alleged in this Complaint, including their negligence, their willful, wanton

and reckless acts, and their breaches of warranty, caused the death of Marie Evans at the age of

54." <u>See</u> Complaint at ¶¶ 87 and 88.  The Massachusetts Wrongful Death Act, M.G.L. c. 229,

establishes the elements of proof, the damages available, and the persons eligible to recover on

wrongful death claims.  In short, to succeed on a claim under the Act, Plaintiff must prove that

Ms. Evans' death resulted from Franklin's negligence, gross negligence, recklessness, or willful

and wanton conduct.  <u>See</u> M.G.L. c. 229, § 2.

Because the claim for wrongful death is based on the claims for negligence and breach of

warranty, both of which fail to state a claim against Franklin, the claim for wrongful death must

also fail.  <u>See</u> <u>Johnson</u> v. <u>Brown & Williamson Tobacco Corp.</u>, 122 F.Supp.2d 194, 209 (D.

Mass. 2000)(where wrongful death claims are based on faulty negligence and breach of warranty

claims, wrongful death claim must also fail).  The Complaint does not allege sufficient facts to

---

[8] Furthermore, Plaintiff's Complaint is based largely upon allegations of unfair and deceptive activity that occurred prior to the enactment of M.G.L. c. 93A and prior to the amendment of that statute that provided for a private right of action.  Plaintiff's Chapter 93A claim must fail to the extent it is based on a statute not in existence at the time of the alleged unfair and deceptive acts and practices.  <u>See</u> <u>Goldstein Oil Co.</u> v. <u>C.K. Smith Co.</u>, 20 Mass. App. Ct. 243, 250 (1985), <u>abrogated on other grounds</u>, <u>Kuwait Danish Computer Co. v. Digital Equip. Corp.</u>, 438 Mass. 459 (2003); <u>Wolf v. Philip Morris Inc.</u>, No. 99-1260-B, slip. op. at 21 (Mass. Super. Ct. June 22, 2000) ("complaint fail[ed] to state a claim to the extent it alleges that conduct occurring before . . . November 11, 1969 is unfair or deceptive").

state a claim either that Franklin (i) failed to exercise reasonable care in distributing the cigarettes; (ii) failed to warn Ms. Evans of dangers known by Franklin, not commonly known by the public; or (iii) breached the implied warranties of merchantability or fitness for a particular purpose. In fact, the Plaintiff fails to allege any wrongdoing on the part of Franklin, other than its presence in the chain of distribution to stores in the geographical area that Ms. Evans lived and worked in. Accordingly, Plaintiff's claim for wrongful death against Franklin must fail and is, likewise, further evidence of the Plaintiff's fraudulent joinder of Franklin for the sole purpose of defeating diversity and depriving Lorillard of its right to access to this Court.

## II.    FRANKLIN SHOULD BE DROPPED FROM THIS LAWSUIT UNDER FED. R. CIV. P. 21

Because Franklin has been fraudulently joined in this action, Franklin should be dropped from this action. Rule 21 of the Federal Rules of Civil Procedure permits the Court to drop Franklin as a defendant. "Parties may be dropped or added by order of the court on motion of any party or of its own initiative after hearing, at any stage of the action and on such terms as are just." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). Here, because Franklin has been fraudulently joined, the Court should enter an order under Rule 21 dropping Franklin as a defendant. See e.g., Trumps v. Harley of New York Assoc., 1995 WL 656983, slip op. at 3 (S.D.N.Y. 1995)(applying Rule 21 to drop parties fraudulently joined to destroy diversity); Alexander v. Electronic Data Systems Corp., 870 F.Supp. 749, 752 (E.D. Mich. 1994)(applying Rule 21, court dismisses fraudulently joined defendants).

## III.    PLAINTIFF IS NOT ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS

Plaintiff is not entitled to a remand order because Franklin and the other non-diverse defendants were fraudulently joined. Therefore, Plaintiff is not entitled to recover attorneys' fees

and costs pursuant to 28 U.S.C. 1447(c). See Picard v. Bay Area Reg. Transit Dept., 823 F.Supp. 1519, 1528 (N.D. Cal. 1993)("As remand has not been ordered, an award of attorneys' fees in not appropriate in this case.")  Likewise, in the unlikely event that Plaintiff's Motion to Remand is granted, Plaintiffs are not entitled to such an award.

In the Motion to Remand, Plaintiff overstates the availability of an award of fees and costs.  Plaintiff fails to discuss the universally accepted standard that an award of attorneys' fees upon remand is entirely within the discretion of the Court.  "An order remanding the case **may** require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal." 28 U.S.C. §1447(c)(emphasis added).  An award of attorneys' fees upon remand is "left to the court's discretion, to be exercised based on the nature of the removal and the nature of the remand." See Sigel, *Commentary on 1988 Revision of Section 1447*; see also Karpowicz v. Blue Cross and Blue Shield of Massachusetts, Inc., 1996 WL 528372 (D. Mass. 1996)(Wolf, J.) ("Such an award is discretionary"); Hornbuckle v. State Farm Lloyds, 2004 WL 2011409 (5th Cir. 2004)("We review a district court's section 1447(c) order for attorney fees under an abuse of discretion standard."); Dacey v. Morgan Stanley Dean Witter & Co., 263 F.Supp.2d 706 (S.D.N.Y. 2003)("courts apply a test of overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties.")  Because of the discretionary nature of this inquiry, there is significant variation among the courts in ruling on a request for fees.

In exercising this broad discretion, courts in the First Circuit have generally denied such requests. See e.g. FLEXcon Co., Inc. v. Ramirez Commercial Arts, Inc., 190 F.Supp.2d 185, 187 (D. Mass. 2002)(Gorton, J.) (denying an award of attorneys fees and costs where "there is no evidence in this record . . . that the defendant sought removal in bad faith or for oppressive

reasons."); <u>Santiago</u> v. <u>Barre Nat'l, Inc.</u>, 795 F.Supp. 508, 513 (D. Mass. 1992)(Woodlock, J.) (denying request for costs, fees and expenses where claim for removal was "colorable"); <u>Kiedaisch</u> v. <u>Nike, Inc.</u>, 2004 WL 368320, *6 (D.N.H. 2004)(McAuliffe, J.) (in the exercise of discretion, request for costs and attorneys fees denied where "defendants' position was plausible"). Furthermore, where, as here, the removal to federal court is grounded upon an allegation of fraudulent joinder, an award of attorneys' fees is not appropriate. <u>See</u> <u>Valdes</u> v. <u>Wal-Mart Stores, Inc.</u>, 199 F.3d 290, 294 (5th Cir. 2000)(denying fee award where defendant had "objectively reasonable grounds" for removal based on fraudulent joinder); <u>Hornbuckle</u> v. <u>State Farm Lloyds</u>, 2004 WL 2011409 (5th Cir. 2004)(same); <u>Crone</u> v. <u>Pfizer, Inc.</u>, 2004 WL 1946386 (N.D. Cal. 2004)(denying award of attorneys' fees where fraudulent joinder position was "not unreasonable").

In this case, an award of attorneys' fees is not warranted. Franklin was named in only four of the eight counts of the Complaint and Plaintiff's allegations of wrongdoing against Franklin are so vague that they do not satisfy even the minimum requirements of notice pleading under Fed. R. Civ. P. 8(a)(2). <u>See</u> Section I.B.1, *supra*. Further, Plaintiff failed to (1) identify any location to which Franklin distributed cigarettes from which Ms. Evans purchased such cigarettes; and (2) identify a single statement (or warning) that Franklin either actually made or could have made to Ms. Evans. Finally, Plaintiff does not allege that Franklin either designed or manufactured the allegedly defective cigarettes. It is clear from the face of the Complaint that Plaintiffs intend to seek recovery from Lorillard and have added Franklin, and two other distribution defendants, for the sole purpose of defeating diversity and depriving Lorillard of its right to litigate this action in this Court. <u>See</u>, Section I.A, *supra*.

Plaintiff wrongly suggests in his brief that the law is settled with regard to claims against distributors of allegedly defective and unreasonably dangerous products. See Motion to Remand at p. 10. In fact, the determination of whether a distributor has been fraudulently joined requires a case-by-case factual analysis and, therefore, cannot be "certain" in all cases. See e.g. Mills, 178 F.Supp.2d 1 (D. Mass. 2001)(Saris, J.) (where plaintiff failed to state any claim against non-diverse distributor defendant, fraudulent joinder is found and motion to remand is denied); Karpowicz, 1996 WL 528372 at *7. As in Karpowicz, Franklin has "raised legitimate jurisdictional issues in evident good faith," and the request for attorneys' fees should be denied. Id. As discussed in detail in the preceding sections, the issue of fraudulent joinder is complex in that the court must consider both the intent of the plaintiffs in joining the particular defendant as well as the sufficiency of the allegations contained in the complaint. Where, as here, "defendants' attempted removal appears to have been in good faith in view of the complexity of the legal questions presented," an award of attorneys' fees is not warranted. East Coast Steel Erectors, Inc. v. International Assoc. of Bridge, Structural and Ornamental Iron Workers, 1990 WL 85805 (D. Mass. 1990)(Wolf J.).[9]

Plaintiff is not entitled to an award of attorneys' fees pursuant to 28 U.S.C. 1447(c).

---

[9] Plaintiff's reliance on Judge O'Toole's decision on August 18, 1999 in four companion cases is distinguishable on its face. See Tabs 1-4 attached to the Motion to Remand. First, Plaintiff fails to mention that the cases cited are companion cases where Judge O'Toole issued identical rulings on identical complaints. Plaintiff's reliance on these opinions as separate instances of a court in this jurisdiction ruling against Franklin's position is, therefore, untenable. Further, in those cases Judge O'Toole places substantial weight on the fact that the distributor defendants were named in five of six counts in the Complaint. In the instant case, Franklin is nominally mentioned in only four of eight counts asserted.

## Conclusion

For all the foregoing reasons, Plaintiff's Motion to Remand and for Award of Attorneys'

Fees and Costs should be denied, and Franklin should be dropped from this action pursuant to

Fed. R. Civ. P. 21.

FRANKLIN WHOLESALERS, INC.

By its attorneys,

*Katy E. Koski*

Frank J. Bailey (BBO# 026485)
James W. Matthews (BBO# 560560)
Katy E. Koski (BBO# 650613)
SHERIN AND LODGEN LLP
101 Federal Street
Boston, MA  02110
(617) 646-2000

Dated: October 4, 2004

## CERTIFICATE OF SERVICE

I, Katy E. Koski, Esq., certify that I served a copy of the within document by hand to all
counsel of record.

Dated: October 4, 2004                              *Katy E. Koski*