UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WILLIE EVANS, as Executor of the Estate of Marie R. Evans, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 04-11840-MLW |
| LORILLARD TOBACCO COMPANY, GARBER BROS., INC., GEORGE MELHADO AND COMPANY, and FRANKLIN WHOLESALERS, INC., | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**LORILLARD TOBACCO COMPANY, GARBER BROS., INC.,
AND GEORGE MELHADO AND COMPANY'S
JOINT OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Table of Contents

Page

INTRODUCTION .............................................................................................................................. 1

PROCEDURAL AND FACTUAL HISTORY ................................................................................. 3

ARGUMENT .................................................................................................................................... 6

I.      STANDARD FOR DETERMINING FRAUDULENT JOINDER. ..................................... 6

II.     PLAINTIFF HAS FAILED TO STATE ANY VALID CLAIM AGAINST THE LOCAL
        DISTRIBUTORS. ............................................................................................................... 8

        A.      The Complaint Fails To Satisfy The Basic Requirements Of Notice Pleading. .............. 9

        B.      The Complaint Fails To Satisfy The "Identification" Element Fundamental To All Product
                Liability Claims In Massachusetts. ...................................................................................... 10

        C.      Plaintiff Has Not Stated A Viable Claim For Breach Of Implied Warranty Against The Local
                Distributors Under Either A Design Defect Or A Failure To Warn Theory. ................... 13

                1.      Plaintiff Has Failed To State A Claim For Design Defect. ................................... 14

                        a.      Plaintiff Has Not Identified A Unique Defect In The Cigarettes That The
                                Decedent Allegedly Smoked. ................................................................... 15

                        b.      Plaintiff Has Failed To Allege A Feasible Alternative Design. .............. 17

                        c.      Cigarettes Are Not Unreasonably Dangerous. ......................................... 17

                        d.      Plaintiff's Design Defect Claim Is Preempted Under The Doctrine Of
                                Conflict Preemption. ................................................................................. 18

                2.      Plaintiff Has Failed To State A Claim For Breach Of Implied Warranty Under
                        A Failure To Warn Theory. ................................................................................... 20

                3.      Plaintiff's Failure To Warn Claim Is Preempted By The Federal Cigarette Labeling
                        And Advertising Act To The Extent It Is Based On Post-June 30, 1969 Conduct. ......... 23

        D.      Plaintiff Has Not Stated A Viable Chapter 93A Claim Against The Local Distributors. ........... 26

        E.      Plaintiff Has Not Stated A Viable Negligence Claim Against The Local Distributors. ........... 28

        F.      Plaintiff's Wrongful Death Claim, Which Is Contingent On The Vitality Of Plaintiff's Other
                Claims, Fails. ................................................................................................................... 29

III.    PLAINTIFF LACKS ANY REAL INTENT TO SECURE A JUDGMENT AGAINST THE LOCAL
        DISTRIBUTORS. ............................................................................................................. 30

IV.     PLAINTIFF'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND COSTS SHOULD BE
        DENIED. ............................................................................................................................ 31

V.      THE LOCAL DISTRIBUTORS SHOULD BE DROPPED FROM THIS LAWSUIT PURSUANT TO
        FED. R. CIV. P. 21. .......................................................................................................... 32

CONCLUSION ............................................................................................................................... 33

Lorillard Tobacco Company ("Lorillard"), Garber Bros., Inc. ("Garber") and George Melhado and Company ("Melhado") (collectively, "Defendants") request that this Court deny Plaintiff's Motion to Remand because, but for the fraudulent joinder of three in-state cigarette distributors—Garber, Melhado, and Franklin Wholesalers, Inc.[1] ("Franklin") (collectively, the "Local Distributors")—this Court has original jurisdiction over this action under 28 U.S.C. § 1332. In further support of this opposition, Defendants submit herewith the Affidavits of Harold Garber from Garber ("Garber Aff.") and Warren J. Alberts from Melhado ("Alberts Aff."), copies of which attached hereto as Exhibits A and B respectively. Because joinder is fraudulent, the Motion to Remand should be denied and the Local Distributors should be dropped from this action pursuant to Fed. R. Civ. P. 21.

## INTRODUCTION

This case belongs in federal court. Even a cursory review of the Complaint reveals that, at its core, the case involves a dispute between two diverse parties: Lorillard (a non-resident cigarette manufacturer) and Willie Evans (the resident son of a deceased smoker). The Local Distributors—three Massachusetts entities who allegedly distributed Newport cigarettes in the Boston area—have no connection to the decedent, Marie Evans. The case has nothing to do with the Local Distributors. They have been named for only one reason: to destroy federal diversity jurisdiction and force Lorillard—the manufacturer of Newports and the real target of Plaintiff's claims—to litigate in state court.

Indeed, with the exception of the case caption, the identification of the parties, and a reference to his Chapter 93A demand letters, Plaintiff specifically identifies the Local

---

[1] Franklin is filing a separate opposition to the Motion to Remand, which Lorillard, Garber and Melhado join in and incorporate by reference.

Distributors by name only once in the entire 90-paragraph Complaint, alleging merely that "Defendants Garber Bros., Inc., George Melhado and Company and Franklin Wholesalers, Inc. distributed Newport cigarettes to stores in the Boston area, including neighborhoods in which Marie Evans lived and worked, during the time that Marie Evans was purchasing and smoking Newport cigarettes." Complaint ¶ 5.

Plaintiff's complaint focuses on Lorillard. It alleges that cigarettes are dangerous and addictive, that Lorillard has known that cigarettes are dangerous and addictive for decades, and that, during this time, Lorillard misled consumers about the dangers associated with cigarette smoking. The Complaint further alleges that Lorillard specifically targeted African-Americans in this "campaign of disinformation," and accomplished this targeting by conducting Newport cigarette giveaways in African-American communities in the Boston area.[2] Of the Complaint's eight counts, four run against only Lorillard. Four additional counts purport to be asserted against all defendants, including the Local Distributors: Count III ("Breach of Warranty"); Count VI ("Violation of G.L. c. 93A, Section 9"); Count VII ("Negligence"); and Count VIII ("Wrongful Death").

Given the paucity of factual allegations concerning the Local Distributors in both the Complaint and the Motion to Remand, it is clear that Plaintiff included the Local Distributors in this action solely to defeat diversity jurisdiction. Because the Local Distributors have been fraudulently joined, their citizenship should be disregarded for purposes of determining this Court's jurisdiction, and Plaintiff's Motion to Remand should be denied.

---

[2] Plaintiff does not contend that the Local Distributors participated or in any way contributed to the alleged cigarette giveaways.

## PROCEDURAL AND FACTUAL HISTORY

### The Decedent's Testimony

In May 2002, Plaintiff filed an emergency petition in Suffolk Superior Court to perpetuate the testimony of the decedent, Marie Evans, pursuant to Mass. R. Civ. P. 27.[3]  On May 17, 2002, the Superior Court issued an Order granting Plaintiff's request.  As a result, the discovery and preservation depositions of Ms. Evans were conducted on May 28, May 29, and May 31, 2002.  Plaintiff's counsel gave notice of the depositions to only one party— Lorillard—the true target of Plaintiff's suit.  Tellingly, Plaintiff did not give notice to any of the Local Distributors.  Thus, the Local Distributors did not know about the depositions and did not attend them.  They therefore had no opportunity to examine the decedent about critical issues, such as where the decedent bought Newport cigarettes and the factual basis for any claims against the Local Distributors.[4]

At her deposition, Ms. Evans testified that, in the "early years," she obtained cigarettes from the following sources: (1) stealing or "bumming" cigarettes from friends and family; (2) at alleged Newport cigarette giveaways in the Roxbury section of Boston; and (3) by purchasing cigarettes at two local corner stores in Roxbury named "Johnny's" and "Moe's." Deposition of Marie Evans, dated May 28, 2002 ("5/28/02 Evans Depo."), at 26-29, attached hereto as Exhibit C.  Ms. Evans further testified that she has lived in the greater Boston area her entire life, more specifically in Roxbury, Hyde Park, Randolph, and Dorchester.  5/28/02

---

[3]  Mass. R. Civ. P. 27 prescribes specific procedures for a party seeking to conduct discovery before initiating a lawsuit against a prospective defendant.

[4] Because the Local Distributors neither received notice of nor attended Ms. Evans' depositions, they reserve the right to object to any attempted use of the depositions against them.  See Fed. R. Civ. P. 32(a) (providing, among other things, that depositions "may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof").

Evans Depo. at 7-8; Deposition of Marie Evans, dated May 29, 2002 ("5/29/02 Evans Depo."),
at 9-10, attached hereto as Exhibit D.  She also testified that she worked in Boston and
Roxbury for her entire career.  5/29/02 Evans Depo. at 14-16.

### The Complaint and Removal

Plaintiff filed this action on June 28, 2004.  He alleges that Ms. Evans began smoking
Newport cigarettes as a young teenager, and ultimately died from lung cancer on June 20,
2002, at age 54.  Complaint ¶¶ 1 and 21.  It is undisputed that Lorillard, the manufacturer of
Newport cigarettes, is a diverse party.  But in a transparent attempt to manufacture a lack of
diversity, Plaintiff sued three in-state cigarette distributors—the Local Distributors.

Consequently, on August 23, 2004, all defendants timely removed the case to this court
based on fraudulent joinder.[5]  In response, Plaintiff filed a motion to remand, arguing that he
has four viable claims against the Local Distributors: (1) breach of warranty; (2) negligence;
(3) violations of Chapter 93A; and (4) wrongful death.

### The Local Distributors

Plaintiff sued three Local Distributors.  Two of them—Garber and Melhado—are
family-owned Massachusetts entities that distribute grocery and convenience store items,
including tobacco products, to retail entities on a wholesale basis.  Garber Aff. ¶¶ 2-3; Alberts
Aff. ¶¶ 2-3.  The third—Franklin—was a distributor of tobacco products that sold only to
certain retail stores owned by The Stop & Shop Supermarket Company LLC.  Affidavit of
Peter Hettinger ("Hettinger Aff.") ¶ 2, submitted with Franklin's Opposition.

---

[5] Defendants incorporate the Notice of Removal by reference and respectfully refer the Court to
the authorities cited therein.

The presence of the Local Distributors in this action is notable in several respects. First and foremost, cigarettes distributed by the Local Distributors simply cannot be connected to the decedent. As noted above, at her deposition, the decedent identified only two retail entities where she bought Newports—Johnny's and Moe's, both located in Roxbury. 5/28/02 Evans Depo. at 26-29. Critically, however, none of the Local Distributors ever distributed cigarettes to Johnny's or Moe's. Garber Aff. ¶ 7; Alberts Aff. ¶ 12; Hettinger Aff. ¶ 3.

Second, Plaintiff broadly alleges that the Local Distributors "distributed Newport cigarettes in the Boston area, including neighborhoods in which in which [*sic*] Marie Evans lived and worked, during the time that Marie Evans was purchasing and smoking Newport cigarettes." Complaint ¶ 5. More specifically, the decedent testified that, during her lifetime, she lived in Roxbury, Hyde Park, Randolph and Dorchester, and worked in Boston and Roxbury. 5/28/02 Evans Depo. at 7-8; 5/29/02 Evans Depo. at 9-10, 14-16. But, neither Garber nor Melhado nor Franklin was ever the exclusive distributor of Newports in any of these areas. Garber Aff. ¶ 8; Alberts Aff. ¶ 13; Hettinger Aff. ¶ 3.

Third, the Local Distributors are notable for what they do not do with respect to cigarettes. The Local Distributors have never made direct sales of tobacco products to individual consumers. Garber Aff. ¶ 3; Alberts Aff. ¶ 4; Hettinger Aff ¶¶ 2-5. The Local Distributors have never manufactured cigarettes or any other tobacco product and have never packaged cigarettes or any other tobacco product for sale to consumers. Garber Aff. ¶ 5(a)-(b); Alberts Aff. ¶ 6; Hettinger Aff. ¶ 4. The tobacco products distributed by the Local Distributors are obtained in sealed packages from various manufacturers, including Lorillard. Garber Aff. ¶ 4; Alberts Aff. ¶ 5; Hettinger Aff. ¶ 5. The Local Distributors do not alter in

any way the packaged cigarette products delivered to them other than by affixing tax stamps to closed cigarette packages. Garber Aff. ¶ 5(c); Alberts Aff. ¶ 6; Hettinger Aff. ¶ 5.

Finally, the three Local Distributors represent only a small fraction of all in-state cigarette distributors in Massachusetts. The Local Distributors represent only about 4.5% (i.e., only three out of approximately 66 licensed cigarette wholesalers for 2004-2005) of the tobacco wholesale market in Massachusetts, and they constitute an infinitesimal fraction of that market when it is expanded to include the approximately 5,500 – 6,500 Massachusetts wholesalers, retailers and vending machine operators who are licensed to distribute cigarettes directly to the consuming public in the Commonwealth for fiscal year 2004. See Letter from Kathleen Fallon, Tax Counsel, Disclosure & Administrative Law Unit, Massachusetts Department of Revenue (dated September 15, 2004) ("DOR Letter"), attached hereto as Exhibit E.

## ARGUMENT

### I.    STANDARD FOR DETERMINING FRAUDULENT JOINDER.

The Supreme Court long ago articulated the standard for fraudulent joinder:

> [The] right of removal cannot be defeated by a fraudulent joinder
> of a resident defendant having no real connection with the
> controversy. . . . If in such a case a resident defendant is joined,
> the joinder, although fair upon its face, may be shown by a
> petition for removal to be only a sham or fraudulent device to
> prevent a removal.

Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1922) (internal citations omitted). As this court has recognized, "the linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact." Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 5 (D. Mass. 2001).

To establish fraudulent joinder, defendants need make only one of two alternative showings. First, they may show that the plaintiff has failed to state any valid, legally sufficient, cause of action against the non-diverse defendant. See Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875, 877 (1st Cir. 1983); Mills, 178 F. Supp. 2d at 4; Coughlin v. Nationwide Mut. Ins. Co., 776 F. Supp. 626, 628 (D. Mass. 1991). "A mere theoretical possibility of recovery under state law does not suffice to preclude removal." Mills, 178 F. Supp. 2d at 5. Second, defendants may show that the plaintiff does not intend to secure a judgment against the non-diverse defendant. See Poultry & Beef of Puerto Rico, Inc. v. Smithfield Packing Co., 635 F. Supp. 1070, 1071 (D.P.R. 1986). [6]

Both standards for establishing fraudulent joinder have been met here. First, there is no possibility that Plaintiff can state a viable cause of action against the Local Distributors or that the joinder of the Local Distributors has a reasonable basis in fact and law. [7] Moreover,

---

[6] Plaintiff contends that this is not the appropriate standard in fraudulent joinder actions. See Motion to Remand at 8-9. Interestingly, however, this is the standard articulated by Judge O'Toole in each of the fraudulent joinder cases attached at Tabs 1-5 to Plaintiff's Motion to Remand. Moreover, courts in numerous jurisdictions have employed this intent standard in analyzing fraudulent joinder. See, e.g., Brady v. Indemnity Ins. Co., 68 F.2d 302, 303 (6th Cir. 1933) ("In fraudulent joinder . . . there is no purpose to prosecute the action against the resident defendant in good faith."); Reeb v. Wal-Mart Stores, Inc., 902 F. Supp. 185, 187 (E.D. Mo. 1995) (fraudulent joinder exists when "plaintiff has no real intention of prosecuting the action against the resident defendant"); Alexander v. Electronic Data Sys. Corp., 870 F. Supp. 749, 752 (E.D. Mich. 1994) ("Joinder of parties is fraudulent if there is no intent to obtain a joint judgment."); Federal Beef Processors, Inc. v. CBS Inc., 851 F. Supp. 1430, 1436 (D.S.D. 1994) (in determining fraudulent joinder, the court may "pierce the pleadings" and consider evidence of the subjective state of mind of the plaintiffs and their counsel); Schwenn v. Sears, Roebuck & Co., 822 F. Supp. 1453, 1455 (D. Minn. 1993) ("Joinder is fraudulent . . . where the plaintiff has no real intention of prosecuting the action against the resident defendant"); see also Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d, § 3723 at 347-51 ("A party will be considered fraudulently joined when plaintiff . . . does not intend to secure a judgment against that defendant.").

[7] It is well-established that the Court may consider evidence outside the pleadings in the fraudulent joinder context. See, e.g., Badon v. R.J.R. Nabisco, Inc., 224 F.3d 382, 289 (5th Cir. 2000) (courts may consider evidence outside the pleadings in deciding whether in-state defendants are fraudulently joinded); Mills, 178 F. Supp. 2d at 56 ("The Court may also examine the affidavits of the *(continued on next page)*

the circumstances of this case compel the conclusion that Plaintiff does not intend to obtain a judgment against the Local Distributors.  As a result, Plaintiff's Motion to Remand should be denied.

## II.    PLAINTIFF HAS FAILED TO STATE ANY VALID CLAIM AGAINST THE LOCAL DISTRIBUTORS.

For the reasons stated below, Plaintiff has failed to state a viable claim for relief against the Local Distributors:

- The Complaint fails to satisfy the basic requirements of notice pleading.

- The Complaint fails to satisfy the "identification" element applicable to all product liability claims in Massachusetts.

- Plaintiff's implied warranty claim based on a design defect theory fails because (1) Plaintiff has not alleged a unique defect in the Newport cigarettes that the decedent smoked; (2) Plaintiff has not identified a technically feasible alternative design; (3) Plaintiff cannot establish that the cigarettes the decedent smoked were unreasonably dangerous; and (4) the claim is barred by the doctrine of conflict preemption.

- Plaintiff's implied warranty claim based on a failure to warn theory fails because the warnings that Plaintiff claims were not given to the decedent would not have provided the decedent with any additional information, as the risks of smoking have been well known since the time the decedent began smoking. Additionally, Plaintiff's failure to warn claims are preempted post-June 30, 1969 by the Federal Cigarette Labeling and Advertising Act.

- Plaintiff's negligent design defect and negligent failure to warn claims fail for the same reasons the implied warranty claim fails.  Moreover, because the Local Distributors have never possessed superior knowledge concerning the risks of smoking, they cannot be held liable in negligence.

- Plaintiff's Chapter 93A claim fails because it is based on his warranty claims and, as noted above, those claims are not viable.  The Chapter 93A claim also fails because Chapter 93A does not apply to conduct prior to its effective date of November 11, 1969.

- Plaintiff's wrongful death claim is contingent upon the vitality of Plaintiff's other claims.  Because Plaintiff has failed to state a single claim against the

---

parties in determining the propriety of joinder.").  Accordingly, the facts relevant to the instant motion are drawn not only from the Complaint, but also from outside the pleadings, including the decedent's deposition testimony and the Local Distributors' affidavits.

Local Distributors upon which relief can be granted, his wrongful death claim also fails.

**A.     The Complaint Fails To Satisfy The Basic Requirements Of Notice Pleading.**

The Complaint is devoid of any specific allegations concerning the Local Distributors' misconduct, making it virtually impossible to determine the alleged basis for their liability. Plaintiff's reliance on generic references in the Complaint to "defendants," without specific allegations of misconduct by the Local Distributors, falls far short of the First Circuit's standard for colorable claims, even under relaxed notice-pleading standards. See, e.g., D.M. Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) ("the factual allegations must be specific enough to justify 'dragging a defendant past the pleading threshold.'") (internal citations omitted); Fleming v. Lind-Waldcock & Co., 922 F.2d 20, 23 (1st Cir. 1990) (finding that pleadings are not sufficient where the plaintiff "rests on 'subjective characterizations' or unsubstantiated conclusions.").

While notice pleading excuses the pleader from reciting the claim in exquisite detail, the allegations may not be so general as to leave the reader at a loss to know what the defendant's liability-producing conduct is said to be. Santiago v. Sherwin Williams Co., 3 F.3d 546, 550 (1st Cir. 1993). A plaintiff cannot rely on conclusions and omit a description of the alleged "wrongful" conduct. Resolution Trust Corp. v. Driscoll, 985 F.2d 44, 48 (1st Cir. 1993) (insufficient to rely on single "conclusory sentence" and to omit description of "wrongful" conduct); see also Perron v. Philip Morris Inc., et al., No. 99-5061-C, slip op. at 1 (Mass. Super. Ct. April 14, 2000) (dismissing plaintiff's complaint against Philip Morris, which alleged counts similar to those in the instant complaint, after finding the complaint "woefully deficient in complying" with Mass. R. Civ. P. 8) (attached hereto as Exhibit F).

Here, Plaintiff does not specify a single wrongful act by any of the Local Distributors, and provides no notice to defendants of what the Local Distributors did that would make them liable. Rather, Plaintiff broadly suggests that "defendants" manufactured, sold and distributed cigarettes that were defective and unreasonably dangerous, "because such cigarettes were carcinogenic, addictive, and contained dangerous levels of tar, nicotine and other substances." Complaint ¶ 60. Under these circumstances, the Complaint falls far short of the minimal pleading standard. See Massachusetts Laborers' Health & Welfare Fund v. Philip Morris, Inc., et al., C.A. No. 97-CV-11552-GAO, 1998 U.S. Dist. LEXIS 22501, at *23 (D. Mass. June 19, 1998) ("This complaint . . . utterly fails to allege facts to support the claims purportedly made against the distributors . . . .").[8] The allegations are therefore insufficient to assert a viable cause of action against the Local Distributors.

### B.     The Complaint Fails To Satisfy The "Identification" Element Fundamental To All Product Liability Claims In Massachusetts.

Giving a generous reading to the vague allegations in the Complaint, the basic theory of Plaintiff's case against the Local Distributors appears to be that they each distributed a dangerous product that resulted in harm to individuals further down the chain of distribution. However, Plaintiff has failed to meet a fundamental requirement—identification—of any product liability claim:

> Identification of the party responsible for causing injury to another is a long-standing prerequisite to a successful negligence action. . . . This requirement serves two purposes: it separates wrongdoers from innocent actors, and also ensures that

---

[8]   Plaintiff attempts to distinguish this Court's decision in Massachusetts Laborers' on the grounds that, here, Plaintiff asserts contract-based claims against the Local Distributors. Motion to Remand at 7-8. The claimed distinction is meaningless. The dispositive point in Massachusetts Laborers' was this Court's decision to dismiss the in-state distributors because the allegations against them lacked specificity and served solely to destroy complete diversity.

wrongdoers are held liable only for the harm that they have caused.

Payton v. Abbott Labs, 386 Mass. 540, 557 (1982); see also Mathers v. Midland-Ross Corp., 403 Mass. 688, 690-91 (1989) (granting summary judgment to defendant who *"was one of a very few manufacturers of this type of machine"* because no evidence identified defendant as the manufacturer of the specific machine in question) (emphasis in original).

The Motion to Remand focuses on the following allegations:

- The Local Distributors "distributed Newport cigarettes in the Boston area, including neighborhoods in which in which [*sic*] Marie Evans lived and worked, during the time that Marie Evans was purchasing and smoking Newport Cigarettes." Complaint ¶ 5.

- "[T]he Newport cigarettes manufactured, sold and distributed by defendants to Marie Evans were defective and unreasonably dangerous to users and consumers, including Marie Evans, because such cigarettes were carcinogenic, addictive, and contained dangerous levels of tar, nicotine and other substances." Complaint ¶ 60.

- "At all relevant times, Marie Evans used and consumed the Newport cigarettes manufactured, sold and distributed by defendants in the manner in which defendants intended and expected such cigarettes to be used." Complaint ¶ 62.

Motion to Remand at 3-4. While these allegations might superficially connect the decedent with Newports distributed by the Local Distributors, they are simply not supported by the facts.

The Local Distributors were never the exclusive distributors of Newport cigarettes in the neighborhoods where the decedent lived and worked. Garber Aff. ¶ 8; Alberts Aff. ¶ 13; Hettinger Aff. ¶¶ 2-3. Thus, the mere fact that the Local Distributors may have distributed Newports in those areas does not establish that the Newports allegedly purchased by the decedent were distributed by the Local Distributors—as opposed to some other distributor. Second, at her deposition, the decedent identified only two retail locations where she purchased cigarettes: "Johnny's" and "Moe's." 5/28/02 Evans Depo. at 26-29. Significantly, however,

- 11 -

the Complaint and Motion to Remand do not allege that Garber, Melhado or Franklin distributed Newports to these retailers. The omission is not surprising—the Local Distributors did not, in fact, distribute to either Johnny's or Moe's. Garber Aff. ¶ 7; Alberts' Aff. ¶ 12, Hettinger Aff. ¶ 3.[9]

Given the lack of identification evidence, the underlying thrust of Plaintiff's argument appears to be that the Local Distributors are somehow liable by virtue of their mere presence in the chain of cigarette distribution. Plaintiff relies on Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 7 (D. Mass 2001), for the unremarkable proposition that Massachusetts law imposes liability on distributors of products for breach of implied warranty, even those who act merely as a conduit for the product at issue. Motion to Remand at 5. While that is a correct statement of the law, liability is still contingent on satisfying the identification requirement. Plaintiff simply cannot do so.

Indeed, in Mills, this Court determined that a distributor of latex gloves had been fraudulently joined, and allowed a motion to drop the distributor as a misjoined party precisely

---

[9] The evidence presented by the Local Distributors here distinguishes this case from the decisions by Judge O'Toole attached at Tabs 1-5 of Plaintiff's Motion. In each of those cases Judge O'Toole ruled that evidence submitted by the distributor defendants regarding their small market share, standing alone, failed to exclude the possibility that "the cigarettes the decedent smoked had been wholesaled by the Distributor Defendants." See, e.g., Tab 1, at 3. Judge O'Toole noted that the distributor defendants had provided "[n]o other market related information . . . about factors such as geographic distribution that might increase or decrease the likelihood that any particular consumer bought cigarettes that had been distributed by those defendants." Id. By stark contrast, the affidavits submitted by the Local Distributors here foreclose the possibility that the decedent smoked cigarettes they distributed by establishing that they did not distribute cigarettes to any of the stores from which the decedent testified that she purchased cigarettes. Moreover, Plaintiff fails to mention that those five decisions are all companion cases involving identical complaints in which Judge O'Toole issued identical rulings. Thus, the suggestion that these decisions constitute five separate instances of this Court rejecting fraudulent joinder arguments as to distributor defendants is incorrect. And, in each of the cases, Judge O'Toole placed substantial weight on the fact that the distributor defendants were named in all but one of the counts in the complaint. Here, however, the Local Distributors are mentioned in only four out of eight counts.

because the plaintiffs, like Plaintiff here, could not establish identification. The Court noted that "[p]laintiffs have virtually no possibility of success . . . because they have failed to allege or provide evidence that Plaintiff was ever exposed to latex gloves distributed by [the defendant distributor]." 178 F. Supp. 2d at 8. The Mills court further noted that, given the lack of evidence connecting the distributor to the plaintiffs, plaintiffs' case against the distributor could only be salvaged by the theory of market share liability. Because Massachusetts courts have not adopted market share liability, however, the Court concluded that the theory was not available to plaintiff. Id. at 8-9. [10]

The policy concerns underlying the identification requirement are implicated here. Plaintiff would hold only three distributors liable for damages allegedly caused by all Newport cigarette sales over the last five decades, even though there are approximately 63 other cigarette distributors within the Commonwealth, see MA DOR Letter (Exhibit E), to say nothing of the number of entities who may have been, but are no longer, distributors.

Accordingly, Plaintiff does not have a colorable products liability claim against the Local Distributors.

### C. Plaintiff Has Not Stated A Viable Claim For Breach Of Implied Warranty Against The Local Distributors Under Either A Design Defect Or A Failure To Warn Theory.

The Complaint attempts to state a claim for breach of implied warranty against the Local Distributors based on two alternative theories: (1) design defect; and (2) failure to warn.

---

[10] Here, Plaintiff does not allege any intent to proceed on the controversial market share liability theory, which the Supreme Judicial Court declined to adopt in Payton. See 386 Mass. at 573-74.

Plaintiff has failed, however, to allege facts giving rise to a viable implied warranty claim under either theory.

### 1.    Plaintiff Has Failed To State A Claim For Design Defect.

Plaintiff's breach of implied warranty claim based on an alleged design defect in Newport cigarettes fails as a matter of law. Massachusetts law governing implied warranty claims is identical in nearly every respect to the Restatement (Second) of Torts, § 402A (1965). Back v. Wickes Corp., 375 Mass. 633, 640 (1978).

To prevail on his design defect claim under § 402A, Plaintiff must allege and prove both: (1) that the cigarettes in question had a specific defect (i.e., that a technically and commercially feasible safer alternative design existed); and (2) that such defect rendered the cigarettes smoked by the decedent "unreasonably dangerous" (i.e., more dangerous than a reasonable consumer, with the common knowledge available in the community, would have expected). See Restatement (Second) of Torts § 402A, cmt. i ("The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer"); Colter v. Barber-Greene Co., 403 Mass. 50, 61-62 (1988); Slotnik v. Dymon, Inc., No. 925548, 1994 WL 879827, at *3 (Mass. Super. April 26, 1994).

Plaintiff's design defect claim fails as to each of these elements.[11]

---

[11]    The "defect" and "unreasonably dangerous" elements are distinct and separate requirements of a design defect claim. The requirement that a plaintiff asserting a design defect claim identify and allege a "defect" unique to the offending product is a sine qua non of Massachusetts products liability law. General notions about the "dangerousness" of a class of products, unwedded to a unique defect, are insufficient to establish liability. Indeed, diverse classes of products—such as motorcycles, pharmaceuticals, guns, alcohol, knives, glass, various types of automobiles, and certain foods—have the potential to cause harm, and yet are not deemed "unreasonably dangerous" to consumers under Massachusetts law and § 402A. See Kearney v. Philip Morris, Inc., 916 F. Supp. 61, 73 (D. Mass. 1996) (noting that courts "have refused to extend the scope of liability of manufacturers to injuries resulting from common, everyday products whose obvious dangers are known to be associated with the use of the product"). The requirement that plaintiffs allege and prove that the product in question has an
*(continued on next page)*

### a.    Plaintiff Has Not Identified A Unique Defect In The Cigarettes That The Decedent Allegedly Smoked.

Plaintiff has not identified a unique defect in the Newport cigarettes that the decedent allegedly smoked that would have rendered those cigarettes "unreasonably dangerous." Instead, Plaintiff generally alleges that:

- "Newport cigarettes manufactured, sold and distributed by defendants to Marie Evans were defective and unreasonably dangerous to users and consumers, including Marie Evans, because such cigarettes were carcinogenic, addictive, and contained dangerous levels of tar, nicotine and other substances." Complaint ¶ 60.

- "At all relevant times, the defendants collectively sold or distributed . . . Newport cigarettes containing disease-causing ingredients and nicotine in addictive amounts, which cigarettes were and are defective and unreasonably dangerous." Complaint ¶ 35.

---

actual "defect" —something that is wrong with a particular product relative to other products of the same class—eliminates the need for courts to entertain the thorny public policy questions of whether an entire class of products (e.g., motorcycles or alcohol) is "unreasonably dangerous." See Kotler v. American Tobacco Co., 926 F.2d 1217, 1224 (1st Cir. 1990) (rejecting argument that "liability for a design defect is cognizable even absent any showing that the product was defective in a way above and beyond its inherent characteristics"), vacated on other grounds, 505 U.S. 1215, reinstated, 981 F.2d 7 (1st Cir. 1992) (citation omitted).

The 1961 Proceedings of The American Law Institute make clear that the "defect" requirement was included within § 402A to ensure that liability could not be imposed on manufacturers of potentially dangerous products absent a showing of a unique defect or deviation from other products of that class. Dean William Prosser, then the Reporter for the Restatement, explained:

> The [ALI] Council then proceeded to raise the question of a number of products which, even though not defective, are in fact dangerous to the consumer, whiskey, for example [laughter]; cigarettes, which cause lung cancer; various types of drugs which can be administered with safety up to a point but may be dangerous if carried beyond that—and they raised the question whether 'unreasonably dangerous' was sufficient to protect the defendant against possible liability in such cases. Therefore they suggested that there must be something wrong with the product itself, and hence the word "defective" was put in: but the fact that the product itself is dangerous, or even unreasonably dangerous to people who consume it is not enough. There has to be something wrong with the product.

1961 Proceedings of The American Law Institute at 87-88. Thus, with the specific example of "cigarettes" in mind, the ALI intentionally added the "defect" requirement to § 402A to protect against the sort of category-wide liability sought by Plaintiff in this case.

- 15 -

Thus, Plaintiff alleges that the "defect" in Newports was the mere presence of nicotine and tar—properties inherent in all cigarettes. As a matter of Massachusetts law, however, an entire category of product cannot be deemed "defective" due to the product's inherent characteristics.

Section 402A makes clear that to prove a design defect claim, a plaintiff must do more than point to some potentially dangerous characteristic inherent in an entire class of products; a plaintiff must identify a specific "defect" that causes the product to deviate from its class in a way that causes injury. Interpreting Massachusetts law on this very point, Judge O'Toole dismissed a complaint in a smoking and health case which, like the Complaint here, challenged cigarettes as inherently dangerous and defective. See Varney v. R.J. Reynolds Tobacco Co., 118 F. Supp. 2d 63, 67 (D. Mass. 2000). Judge O'Toole explained that the design defect claim failed because plaintiff only claimed that "all cigarettes are unreasonably dangerous, not that the defendants' cigarettes were because of some unique feature of design, more dangerous than others." Id. at 70 (emphasis added).

Similarly, in Kotler v. American Tobacco Co., 926 F.2d 1217 (1st Cir. 1990), vacated on other grounds, 505 U.S. 1215, reinstated, 981 F.2d 7 (1st Cir. 1992), the First Circuit affirmed the grant of summary judgment against a plaintiff who had argued that "liability for a design defect is cognizable even absent any showing that the product was defective in a way above and beyond its inherent characteristics." Id. at 1224 (citation omitted). In Herlihy v. R.J. Reynolds Tobacco Co., Civ. A. No. 85-3888-MA, 1988 WL 73434 (D. Mass. June 27, 1988), the court likewise held that a claim that "cigarettes as a whole are unsafe [is] barred by governing law in Massachusetts," explaining that a "plaintiff attempting to demonstrate that cigarettes were defectively designed must plead that the particular tobacco used in the cigarettes consumed was, itself, 'bad'; that is, it deviated from the norm for tobacco in some

untoward way." Id. at *2; see also Viola v. American Brands, Inc., Civ. A. No. 85-2496-WD, 1989 WL 234525, at * 1 (D. Mass. July 14, 1989) (to be cognizable, a defect claim must allege that "defendants' cigarettes were adulterated by some substance a reasonable consumer would not expect to find in cigarette products").

    **b.**  **Plaintiff Has Failed To Allege A Feasible Alternative Design.**

  To succeed on his implied warranty design defect claim, Plaintiff must also show that a commercially or technically feasible alternative design exists. See Kotler, 926 F.2d at 1225 (design effect case is "dependent on proof of a safer alternative design"); see also Johnson v. Brown & Williamson Tobacco Corp., 122 F. Supp. 2d 194, 207 (D. Mass. 2000); Wasylow v. Glock, Inc., 975 F. Supp. 370, 378-81 (D. Mass. 1996); Wajda v. R.J. Reynolds Tobacco Co., 103 F. Supp. 2d 29, 35 (D. Mass. 2000); Herlihy, 1988 WL 73434, at *2; Wolf v. Philip Morris Inc., No. 99-1260-B, slip op. at 10-11 (Mass. Super. Ct. June 22, 2000) (attached hereto as Exhibit G). Plaintiff, however, has not identified a commercially or technically feasible alternative design. Rather, the Complaint summarily states: "The foreseeable risks of harm posed by such Newport cigarettes could have been reduced or avoided by defendants' adoption of a reasonable alternative design." Complaint ¶¶ 35 and 60. There is not the slightest description of what this design was, much less why it would have avoided causing harm to the decedent if adopted.

    **c.**  **Cigarettes Are Not Unreasonably Dangerous.**

  Plaintiff's implied warranty design defect claim is deficient not only for failing to identify a unique defect in the cigarettes the decedent smoked and a feasible alternative design, but also because cigarettes, as a matter of law, are not "unreasonably dangerous." Cigarettes cannot be deemed "unreasonably dangerous" because the inherent dangers of smoking,

including the risk of addiction, have long been a matter of common knowledge. Specifically, as discussed in Section II.C.2, infra, Massachusetts courts have recognized that the health risks associated with smoking, including addiction, were so well known as to constitute common knowledge by the early 1960s, when the decedent allegedly began smoking. See, e.g., Wolf, slip op. at 8; Massachusetts Laborers' Health & Welfare Fund v. Philip Morris, Inc., 62 F. Supp. 2d 236, 242-43 (D. Mass. 1999).

Comment i to § 402A supports these decisions. It uses cigarettes as the prototypical example of a product that is not defective because its risks are commonly known. Comment i states:

> The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics . . . Good tobacco is not unreasonably dangerous merely because the health effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous . . .

Restatement (Second) of Torts § 402A, cmt. i (1965) (emphasis added).

### d.    Plaintiff's Design Defect Claim Is Preempted Under The Doctrine Of Conflict Preemption.

Plaintiff seeks to impose liability on the Local Distributors because they distribute cigarettes containing tar and nicotine. As discussed above, Massachusetts case law and § 402A expressly reject such categorical liability. But there is more: allowing defective design claims to proceed would invade the policy-making province of the Legislature, and such claims are thus preempted under the doctrine of "conflict preemption."

The United States District Court for the Western District of Wisconsin discussed conflict preemption in the context of a smoking and health action in Insolia v. Philip Morris Inc., 128 F. Supp. 2d 1220 (2000). Relying on the Supreme Court case of Geier v. American

Honda Motor Co., 529 U.S. 861, 874 (2000), the Insolia court held that individual actions seeking to impose tort liability upon the manufacturer of cigarettes, based merely on the inherent risks of cigarettes, are barred under the doctrine of conflict preemption. 128 F. Supp. 2d at 1224-25.[12]

The Insolia court drew the following analogy between the cigarette liability suit before it and Geier, an analogy which is equally applicable here:

> Just as it would have interfered with the federal government's policy on air bags to allow state court actions against automobile manufacturers who relied on the safety standard to omit air bags from their vehicles, allowing tort actions against cigarette manufacturers and sellers for the allegedly negligent act of continuing to make and sell cigarettes would interfere with Congress's policy of keeping cigarettes on the market.

Id. at 1224-25 (emphasis added).

Indeed, whether an entire class of products is so dangerous as to warrant category-wide liability is a complex legislative and political question, not for judicial determination. Courts and commentators have recognized that it is improper for the judiciary to impose liability on an entire class of products, because the ultimate question of whether an entire class of products (e.g., motorcycles, alcohol, or pharmaceuticals) should or should not be sold is a question to

---

[12] In Geier, the Supreme Court held that preemption may exist where a theory of liability would conflict with Congressional policy, even absent an express preemption provision. The plaintiff in Geier sought to recover against a car manufacturer for injuries he sustained in an accident. Plaintiff's theory of recovery was that his car was defective because it lacked an airbag. 529 U.S. at 864-66. However, a Federal Motor Vehicle Safety Standard in effect at the time of the accident made the provision of airbags optional for manufacturers. Id. The Court found that the decision to make airbags optional (and not mandatory) was a considered one, aimed at winning consumer acceptance and encouraging technological development. Id. at 874-80. Thus, although the Court found that the Safety Standard did not expressly preempt tort actions based on the absence of an airbag, id. at 867-68, it held that allowing such suits would conflict with the government's policy choices to allow manufacturers the option of manufacturing cars with or without airbags. Id. at 881-82.

- 19 -

be resolved by the Legislature. Thus, in the context of a lawsuit against certain firearms manufacturers, the United States District Court for the District of Massachusetts reasoned:

> It is the province of the legislative or authorized administrative bodies, and not the judicial branch, to advance through democratic channels policies that would directly or indirectly either 1) ban some classes of handguns or 2) transform firearm enterprises into insurers against misuse of their products. Frustration at the failure of legislatures to enact laws sufficient to curb handgun injuries is not adequate reason to engage the judicial forum in efforts to implement a broad policy change.

Wasylow v. Glock, Inc., 975 F. Supp. 370, 380-81 (D. Mass. 1996) (refusing to hold gun manufacturer liable because, despite their inherent dangers, the Glock pistol fulfilled any reasonable consumer's expectations).

Like the plaintiff in Wasylow, Plaintiff here seeks to accomplish through the courts what could not be accomplished in the political arena: a ban on cigarettes. This Court should reject Plaintiff's invitation to circumvent established law by transforming every cigarette containing nicotine and tar, i.e., every cigarette sold, into a potential tort suit.

## 2. Plaintiff Has Failed To State A Claim For Breach Of Implied Warranty Under A Failure To Warn Theory.

Plaintiff's breach of implied warranty claim is also based on the Local Distributors' alleged failure to warn the decedent of the harms associated with smoking. Complaint ¶ 84. However, under Massachusetts law, "there is no duty to warn of dangers that are obvious to nearly all." Johnson, 122 F. Supp. 2d at 204 (citing Colter v. Barber-Greene Co., 403 Mass. 50, 59 (1988)). Consequently, federal and state courts in Massachusetts and throughout the nation consistently have dismissed failure to warn claims in smoking and health cases—claims essentially identical to those asserted here—based on the public's common knowledge of the risks of smoking. See, e.g., Wolf, slip op. at 8 (stating that "[t]his court will take judicial notice of the fact that the smoking of cigarettes poses serious health risks, including the risk of