UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIE EVANS, as Executor of the Estate of Marie R. Evans, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| LORILLARD TOBACCO COMPANY, GARBER BROS., INC., GEORGE MELHADO AND COMPANY, and FRANKLIN WHOLESALERS, INC., | ) ) ) ) ) |
| Defendants. | ) ) ) ) |

C.A. NO. 04-11840 (MLW)

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND AND FOR AWARD OF ATTORNEYS' FEES AND COSTS

Plaintiff Willie Evans, as Executor of the Estate of Marie R. Evans, submits this Reply Memorandum of Law in support of Plaintiff's Motion To Remand And For Award Of Attorney's Fees And Costs (the "Motion"), along with the accompanying Plaintiff's Motion For Leave To File Reply Memorandum. Defendants disregard the decisions of this Court that establish that the Massachusetts distributors, Garber Bros., Inc. ("Garber"), George Melhado & Company ("Melhado"), and Franklin Wholesalers, Inc. ("Franklin"), are proper defendants and that the claims asserted against them are sufficient to require remand of this action to Massachusetts Superior Court. Defendants' multiple affidavits, letters and citations to legal authority succeed only in confirming that defendants cannot meet their burden of establishing the existence of federal jurisdiction. In fact, defendants' oppositions make perfectly clear that at the time they removed this action to federal court, defendants understood that they had no chance, based on the relevant case law and the allegations of the Complaint, of meeting their heavy burden of proving

their claim of fraudulent joinder. Accordingly, the Motion To Remand should be granted and defendants should be required to reimburse plaintiff for the costs and expenses associated with this pointless exercise.

## ARGUMENT

I.  <u>DEFENDANTS FAIL TO MEET THEIR BURDEN OF ESTABLISHING FRAUDULENT JOINDER AND THEREFORE THIS ACTION SHOULD BE REMANDED TO STATE COURT.</u>

Defendants' burden on this Motion To Remand is substantial. They must establish by clear and convincing evidence that the plaintiff does not have even a possibility of stating a valid claim against the non-diverse defendants. See *Fabiano Shoe Co. v. Black Diamond Equipment, Ltd.*, 41 F. Supp. 2d 70, 71-73 (D. Mass. 1999); *C. Pappas Co. v. E. & J. Gallo Winery*, C.A. No. 83-3348-K, 1984 WL 2930, at *3 (D. Mass. January 17, 1984). All disputed questions of fact and all uncertainties in the law must be resolved in favor of plaintiff, the non-removing party. *Fabiano Shoe Co.*, F. Supp. 2d at 72. The presumption is against removal and in favor of remand. See *In re Massachusetts Diet Drug Litigation*, C.A. No. 04-10911-GAO, 2004 WL 2181572, at *3 (D. Mass. September 17, 2004) ("Any doubts concerning the court's jurisdiction should be resolved against removal and in favor of remand to state court.").

Defendants' first strategy in opposing this Motion is to submit a great deal of information that ultimately has no relevance to the Complaint in this case or to the Motion.[1]  For example,

---

[1] Moreover, the law regarding whether courts may consider matters outside the pleadings when determining a claim of fraudulent joinder is far from "well-established," as defendants maintain. Lorillard Tobacco Company, Garber Bros., Inc., and George Melhado and Company's Joint Opposition to Plaintiff's Motion to Remand ("Joint Opposition") at 7, n.7. The First Circuit has not resolved the matter, and the Fifth Circuit case that defendants cite is not controlling. The better view is the one articulated in another case defendants cite, *Schwenn v. Sears, Roebuck & Co.*, 822 F. Supp. 1453, 1455 (D. Minn. 1993). There, the court declined to pierce the pleadings to determine whether fraudulent joinder exists, finding instead that the appropriate inquiry was whether, on the face of the complaint, there was a possibility that a state court would find that the complaint stated a cause of action against the resident defendant. *Id.* This Court should follow this approach, obviating the need to consider affidavits from defendants – which, of course, necessitate counter-affidavits from plaintiff -- that can only be inconclusive at this early pre-discovery phase of the proceedings.

defendants contend that post-1969 failure to warn claims against cigarette manufacturers are preempted by federal law, even though plaintiff specifically confines his failure to warn claims to pre-1969 conduct. *See, e.g.,* Complaint at ¶¶ 61, 84, 89. Similarly, defendants argue that M.G.L. c. 93A claims based on conduct occurring prior to 1969 are not cognizable, even though plaintiff alleges that defendants engaged in wrongful conduct after 1969, in fact, continuously up until Ms. Evans's death in 2002. *See, e.g.,* Complaint at ¶¶ 2, 5.

Equally superfluous to the Motion are the affidavits submitted by the Massachusetts Distributors. The affidavits allege that the Massachusetts Distributors have never manufactured, designed or sold Newport cigarettes directly to consumers. This claim is irrelevant because first, plaintiff has made no such allegations and second, as Garber and Melhado concede, "Massachusetts law imposes liability on distributors of products for breach of implied warranty, even those who act merely as a conduit for the product at issue" (Joint Opposition at 12).

The affidavits also claim that the Massachusetts Distributors did not distribute Newport cigarettes to Johnny's and Moe's, two stores that Marie Evans frequented as a teenager in her Roxbury neighborhood, although Garber can only say that it did not do so "to the best of [its President's] recollection." Even if true, this claim is meaningless because it "does not so exclude the possibility" that these Massachusetts Distributors distributed Newport cigarettes to the many other stores -- in Roxbury and elsewhere -- from which Ms. Evans purchased cigarettes over a forty-year period, "that an inference of fraudulent joinder would be warranted." *Estate of Bakoian v. R.J. Reynolds Tobacco Co.*, C.A. No. 98-11739-GAO, slip. op. at 3 (D. Mass. August 18, 1999) [attached at Tab 1 to Plaintiff's Memorandum Of Law]; see also *Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1, 6 (D. Mass. 2001) ("an examination of evidence extrinsic to the allegations of the complaint, to determine whether there is any reasonable likelihood of

recovery, can be problematic in fact-laden disputes, particularly where the opportunity for discovery has been lopsided").[2] In any event, the attached Affidavits of Willie Evans, Leslie Y. Adamson and Carole Brown confirm that Ms. Evans purchased Newport cigarettes at a variety of stores in the course of forty years, including at Stop & Shop supermarkets to which Franklin has admittedly distributed tobacco products. *See* Affidavit of Peter Hettinger, ¶2.

The second strategy defendants adopt on this Motion is to finesse the standard for proving a claim of fraudulent joinder. Lorillard, Garber and Melhado argue that they need only show that plaintiff cannot state a valid cause of action against the non-diverse defendants. Joint Opposition at 7. Franklin acknowledges that this is not the correct standard, and that defendants must show that there is not even a <u>possibility</u> that plaintiff can state a cause of action against the non-diverse defendants. Defendant Franklin Wholesalers, Inc.'s Opposition to Plaintiff's Motion to Remand and for Award of Attorney's Fees and Costs ("Franklin Opposition") at 7.[3] Or, as this Court has put it in a virtually identical situation, "the plausibility of the pleaded claims is sufficient to defeat the suggestion that the plaintiff lacked any good faith reason for joining the Distributor Defendants." *Estate of Bakoian*, slip. op. at 3; see also *Fabiano Shoe Co.*, 41 F. Supp. 2d at 72.

Plausibility refers to "that which at first glance appears to be true, reasonable, valid, etc., but which may or may not be so." Webster's New World College Dictionary, Third Edition, 1997, Simon & Schuster. Defendants' oppositions hold plaintiff's claims to a much higher standard, asking instead whether plaintiff's claims are "viable," or "state a claim," or what

---

[2] Defendants contend that "neither Garber nor Melhado nor Franklin was ever the exclusive distributor of Newports" in any of the neighborhoods in which Marie Evans lived and worked (Joint Opposition at 5) as if that were the end of the matter. This contention is ineffectual because plaintiff has alleged that all three distributors distributed Newport cigarettes that Ms. Evans purchased and smoked, an allegation not disproved by defendants' claim that no one distributor was "the exclusive distributor of Newports" in Ms. Evans's neighborhoods.
[3] Defendants' fallback position, that plaintiff's intentions with respect to seeking judgment against the Massachusetts Distributors are relevant to the existence of federal jurisdiction, is discussed *infra*.

plaintiff "must establish" to "prevail," or "succeed." See, e.g., Joint Opposition at 14, 17, 28; Franklin Opposition at 15, 17. But it is insufficient for defendants to argue that plaintiff's claims against the Massachusetts Distributors may not succeed. It is also insufficient to argue that such claims may not survive a motion for summary judgment or even a motion to dismiss. As the court observed in *Schwenn v. Sears, Roebuck & Co.*, 822 F. Supp. 1453, 1455 (D. Minn. 1993), a case cited by Lorillard, Garber and Melhado, "it is inappropriate to apply a summary judgment standard to a claim of fraudulent joinder, because the merits of an action are distinct from the jurisdictional issues presented by such a claim." What defendants must do to establish the existence of federal jurisdiction is to present the Court with clear and convincing evidence that plaintiff's claims – resolving any disputed issues of law or fact in plaintiff's favor – are not even plausible. Defendants fail to do so.

For example, defendants do not establish that plaintiff's breach of warranty claims are implausible simply by pointing to comment i of the Restatement (Second) of Torts, § 402A (1965).[4] Massachusetts law expressly holds that breach of warranty claims may be asserted against cigarette manufacturers whose products are alleged to be "inherently carcinogenic and addictive." *Kyte v. Philip Morris, Inc.*, 408 Mass. 162, 171 (1990). In this case, plaintiff has alleged that "the Newport cigarettes . . . sold and distributed by defendants . . . were carcinogenic, addictive, and contained dangerous levels of tar, nicotine and other substances" (Complaint, ¶ 60) – certainly a plausible claim given the *Kyte* decision. Even if the law were ambiguous on this point, which it is not, "the court is to resolve . . . any ambiguities in the

---

[4] Comment d of the Restatement (Third) of Torts § 2 (1998), which closely parallels Section 402A, omits any reference to tobacco in "its list of 'common and widely distributed products' which may inherently pose substantial risks of harm," suggesting that comment i "appears to be on very shaky ground currently." *Little v. Brown & Williamson Tobacco, Co.*, 243 F. Supp. 2d 480, 491 n.7 (D. S.C. 2001) (internal citation omitted) (rejecting argument that cigarettes cannot be unreasonably dangerous as a matter of law and concluding that manufactured cigarettes are different from raw tobacco).

controlling state law in favor of the non-removing party. *Fabiano Shoe Co.*, 41 F. Supp. 2d at 72. Judge O'Toole specifically found that "quite general" pleadings containing the following allegations were sufficient to state plausible claims, at least for breach of warranty and negligence: "the Distributor Defendants sold cigarettes in Massachusetts"; "the cigarettes were 'unreasonably dangerous' and 'defective' in breach of implied warranties"; "the defect caused plaintiff's injuries"; "plaintiff purchased and consumed tobacco products . . . distributed by the Distributor Defendants"; and "the defendants' negligence was the cause of [plaintiff's' injuries." Defendants must concede that the Complaint in this case alleges that much, and more, against the Massachusetts Distributors.[5] *Estate of Bakoian*, slip op. at 3; *Curtis v. R.J. Reynolds Tobacco Co*, C.A. No. 98-11961-GAO, slip op. at 3 (D. Mass. August 18, 1999) [attached to Memorandum of Law at Tab 2] (same); *McKenney v. R.J. Reynolds Tobacco Co.*, C.A. No. 98-11755-GAO, slip op. at 3 (D. Mass. August 18, 1999) [attached to Memorandum of Law at Tab 3] (same); *Teneriello v. R.J. Reynolds Tobacco Co.*, C.A. No. 98-11878-GAO, slip op. at 3 (D. Mass. August 18, 1999) [attached to Memorandum of Law at Tab 4] (same); *Anderson v. R.J. Reynolds Tobacco Co.*, C.A. No. 99-11382-GAO, 1999 U.S. Dist. LEXIS 22261, at *5-9 (D. Mass. Sept. 20, 1999) [attached at Memorandum of Law at Tab 5] (same).

Equally unavailing is the argument that plaintiff's failure to warn claims fail because the hazards of smoking were allegedly "common knowledge." The fact that certain courts may share defendants' view does not establish that plaintiff's claims are not even plausible as a matter of controlling state law. Indeed, by inviting this Court to take judicial notice of the public's

---

[5] Another irrelevant issue defendants raise in their Oppositions is whether plaintiff can "identify" the distributors of the product that caused Marie Evans's injury. This case is obviously not like the cases defendants cite in which the plaintiff is unable to identify the manufacturer of the injury-causing product. Plaintiff has identified the manufacturer of Newport cigarettes and the distributors in the neighborhoods where Marie Evans lived and worked. Given that not one of the Massachusetts Distributors identified by plaintiff denies that it distributed Newport cigarettes in those neighborhoods, defendants' choice to raise that issue at all is telling.

alleged knowledge of the hazards of smoking, defendants reveal that the issue of common knowledge is a subject of continuing debate, militating in favor of remand.  In fact, the Massachusetts state court case defendants rely on for this proposition expressly acknowledges that other courts hold the different view that the public's knowledge of the hazards of smoking at any given time "is a factual question to be determined by a jury, and not a matter susceptible to judicial notice." *Wolf v. Philip Morris. Inc.*, No. 99-1260-B, slip op. at 6 (Mass. Super. Ct. June 21, 2000) [Joint Opposition at Exhibit G] (citing, *inter alia*, *Fahey v. R.J. Reynolds Tobacco Co.*, 1995 WL 809837, at *7 (Mass. Super. Ct. June 12, 1995)).  Certainly, if Lorillard's former President and Chief Executive Officer Andrew H. Tisch believed what he told a Congressional subcommittee only ten years ago, namely that cigarettes were not addictive, it is unreasonable to hold Marie Evans to a higher level of knowledge as a matter of law.

Defendants' oppositions also fail because the arguments the Massachusetts Distributors advance, with the exception of their misplaced "identification" argument, apply with equal force to the claims asserted against Lorillard, negating any inference that the claims against the resident defendants are a sham. For example, the argument that plaintiff's design defect claim fails to specify a feasible alternative design applies equally to the design defect claim against Lorillard.  The same is true of the arguments that the Massachusetts Distributors make with respect to plaintiff's negligence and failure to warn claims, the Chapter 93A claim and the wrongful death claim – if the claims against them fail, then they fail against Lorillard, too.  Yet as a matter of logic and precedent, a pleading defect that applies to all defendants, whether diverse or non-diverse, cannot support an inference that the non-diverse defendants were fraudulently joined.  And this Court has so found.  See *In re New England Mutual Life Insurance*

*Company Sales Practices Litigation*, 324 F. Supp.2d 288, 304-306 (D. Mass. 2004) (citing *Chesapeake & Ohio Railway Co. v. Cockrell*, 232 U.S. 146, 153 (1914)).

Defendants' final effort is an attempt to establish that plaintiff does not intend to secure a judgment against the Massachusetts Distributors. As discussed, *infra*, the plausibility of plaintiff's claims is sufficient in and of itself to defeat a claim of fraudulent joinder. Defendants fail to point to a single case in this District or in this Circuit that relies on an alleged lack of intent to secure a judgment as an independent basis for a finding of fraudulent joinder. The cases defendants cite from other jurisdictions may include this ground in their boilerplate recitation of the standard, but clearly have not found fraudulent joinder solely, or even principally, for this reason. See, e.g., *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *overruled on other grounds by, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).[6]

Even if this ground could support a finding of fraudulent joinder, there is no credible evidence that plaintiff does not intend to pursue the Massachusetts Distributors vigorously. Defendants try to make much of the fact that plaintiff notified Lorillard but not the Massachusetts Distributors, of his emergency motion to preserve Marie Evans's testimony when her health took a turn for the worse in 2002. As explained in the attached Affidavit of Michael D. Weisman, Esq., the Massachusetts Distributors were first identified by plaintiff's counsel in March 2004 and therefore could not be notified on an emergency basis in June 2002. *See* Affidavit of Michael D. Weisman, Esq., ¶ 8. Plaintiff's counsel made an effort to identify the

---

[6] *Alexander v. Electronic Data Systems Corp.*, 870 F. Supp. 749, 752-53 (E.D. Mich. 1994) and *Scientific Computers, Inc. v. Edudata Corp.*, 596 F. Supp. 1290, 1292 (D. Minn. 1984) are inapposite. In *Alexander*, the plaintiff failed to specify a single individual wrong on the part of the non-diverse defendants. Here, plaintiff alleges that each Massachusetts Distributor distributed a defective and unreasonably dangerous product that injured and killed Marie Evans. In *Scientific Computers*, the non-diverse defendant had not even been served with the complaint prior to removal and was not named in a subsequently filed federal action. Counsel for the plaintiff told counsel for the non-diverse defendant that it had been singled out (was the "lucky one"), but any inconvenience to it would be slight. Here, in contrast, plaintiff has treated the non-diverse defendants and diverse defendants similarly. All parties have received demand letters pursuant to M.G.L. c. 93A, all parties have been served with the Complaint, and all parties have been served with Interrogatories and Requests for Production of Documents.

distributors earlier than March 2004 by asking Lorillard's then counsel, Richard Zielinski, Esq., to provide that information. Mr. Zielinski responded that even if he had that information, Lorillard would not authorize him to release it to Mr. Weisman. *Id.*, ¶ 7.

In the same vein is defendants' claim that plaintiff's "election" to sue, according to Garber and Melhado, "only 3 of approximately 66 current Massachusetts tobacco distributors," or, according to Franklin, "only three of untold numbers of distributors who have distributed cigarettes . . . during the past 47 years," allegedly shows that joinder of the Massachusetts Distributors was fraudulent. Joint Opposition at 30; Franklin Opposition at 9. Defendants' argument is that naming "a single non-diverse entity from a larger 'secondary' class of defendants" demonstrates an attempt to defeat diversity. Joint Opposition at 30. Defendants fail to point to any cases from this jurisdiction that support that theory. Anyway, this is not a situation where plaintiff has named a single non-diverse entity from a larger secondary class of potential defendants, or joined "resident [secondary] defendants [that] have no real connection with the controversy." Franklin Opposition at 9. The "evidence" defendants submit is simply not probative of whether other cigarette wholesalers in Massachusetts distributed Newport cigarettes during the relevant time period in the communities where Marie Evans lived and worked.

For example, defendants provide the Court with the number of "current" cigarette wholesalers in Massachusetts, although Marie Evans died in 2002. Defendants also provide the Court with the number of cigarette wholesalers in Massachusetts from 2000-2004, although Ms. Evans smoked continuously from the early 1960's until her death in June 2002.

Transparently, defendants offer no evidence that any of these "untold numbers" of cigarette wholesalers actually distributed Newport cigarettes between 1960-2002 in the

communities where Ms. Evans lived and worked. Defendants also do not deny that the Massachusetts Distributors did distribute Newport cigarettes in those communities during that time period, making their claim of no "real connection with the controversy" sound hollow indeed. Finally, defendants offer no evidence of the Massachusetts Distributors' share of the Newport cigarette market in the relevant geographic areas or the shares of any of the distributors that plaintiff did not name. In sum, defendants' evidence is so tangential and inconclusive as to be even less probative than what this Court has previously considered and rejected – repeatedly – as insufficient to establish fraudulent joinder. See *Estate of Bakoian*, slip op. at 3 (evidence of Distributor defendants' share (9%) of the wholesale cigarette market in Massachusetts did not so exclude the possibility that plaintiff had smoked cigarettes wholesaled by these defendants to warrant an inference of fraudulent joinder). Plaintiff's Motion To Remand should be granted.

II.    <u>PLAINTIFF IS ENTITLED TO AN AWARD OF THE ATTORNEY'S FEES AND
COSTS INCURRED IN SEEKING REMAND OF THIS IMPROPERLY REMOVED
ACTION.</u>

An order of remand requiring the payment of attorney's fees and costs is appropriate where defendants' arguments supporting removal, although colorable, are wrong as a matter of law. See, e.g., *Hofler v. Aetna US Healthcare of California, Inc.*, 296 F.3d 764, 770 (9th Cir. 2002). Defendants concede that an award of fees and costs is also appropriate where defendants disregard precedent or lack objectively reasonable grounds for removal. Joint Opposition at 31; Franklin Opposition at 21. All of these circumstances are present here.

First, defendants' arguments for fraudulent joinder are wrong as a matter of law because plaintiff's claims against the resident defendants are plausible. Second, defendants ignore clear precedent in Massachusetts (some of which they even acknowledge in their oppositions) finding that distributors can be held liable for breach of warranty and a violation of M.G.L. c. 93A for

doing nothing more than distributing defective and unreasonably dangerous products that injure consumers. See *Colter v. Barber-Greene Co.*, 403 Mass. 50, 61-62 (1988); *Maillet v. ATF-Davidson Co.*, 407 Mass. 185, 193 (1990). Defendants also effectively ignore the unfavorable cases from this Court (attached to plaintiff's Memorandum of Law at Tabs 1-5) by making the untenable claim that they are distinguishable mathematically because the distributors in those cases were named in five out of six counts rather than the four out of eight counts in this case (Franklin Opposition at 21; Joint Opposition at 12 n. 9). Third, defendants pad their opposition with arguments, such as federal preemption and retroactive application of Chapter 93A, that bear no relation to plaintiff's Complaint and thus cannot be "objectively reasonable grounds" for removal. Fourth, as discussed *supra*, they try to justify their claim of fraudulent joinder using market "evidence" that is far less probative than the market evidence this Court has already considered and rejected on prior occasions. Fifth, defendants' claim that the Massachusetts Distributors' failure to get notice of Marie Evans's emergency deposition is suggestive of fraudulent joinder is pure invention. The Massachusetts Distributors were not identified until March 2004 – almost two years after Marie Evans's death and after Lorillard declined to provide plaintiff's counsel with the names of the relevant distributors.

In short, the record overwhelmingly supports the conclusion that defendants removed this case in clear disregard of the applicable standards and without objectively reasonable grounds, warranting an award of attorney's fees and costs. See *Hart v. WalMart Stores, Inc. Associates' Health and Welfare Plan*, 360 F.3d 674, 678 (7th Cir. 2004) (if removal is found to be improper, the plaintiff is presumptively entitled to an award of fees). Defendants' resort to the alleged "complexity of the legal questions presented" (Franklin Opposition at 22) to explain their improper removal is disingenuous, given that any alleged complexity was of defendants' own

making. Finally, contrary to defendants' suggestion, they are not insulated from the consequences of their improper removal simply because they chose to ground the removal "upon an allegation of fraudulent joinder. . . ." Franklin Opposition at 21; Joint Opposition at 32. See, e.g., *Williams v. Phillip Morris, Inc.*, No. C-02-1170 VRW, 2002 WL 1677722, at *3-4 (N.D. Cal. July 17, 2002) (ordering payment of fees and costs under 28 U.S.C. § 1447 where removal grounded upon claim of fraudulent joinder); *Ecology & Environment, Inc. v. Automated Compliance Systems, Inc.*, No. 00-CV-0887E(F), 2001 WL 1117160, at *5-6 )W.D.N.Y. September 4, 2001) (citing *Morgan Guar. Trust Co. v. Republic of Palau*, 971 F.2d 917 (2d Cir. 1992)) (same). Plaintiff is presumptively entitled to an award of costs and such an award in this case is both warranted and appropriate.

## CONCLUSION

For all of the foregoing reasons, plaintiff respectfully requests that this Court grant Plaintiff's Motion To Remand And For Award Of Attorneys' Fees And Costs, and deny defendants' request for an order under Fed. R. Civ. P. 21 dismissing the Massachusetts Distributors as defendants.

Plaintiff WILLIE EVANS, as Executor of the Estate of Marie R. Evans,

By his Attorneys,

Michael D. Weisman, BBO# 521000
Rebecca P. McIntyre, BBO# 547402
WEISMAN & McINTYRE,
  a Professional Corporation
114 State Street
Boston, MA 02109
(617) 720-2727

DATED:  November 18, 2004

## CERTIFICATE OF SERVICE

I, Rebecca P. McIntyre, hereby certify that a true copy of the above document was served upon the attorney of record for each other party by first class mail on November 18, 2004.

Rebecca P. McIntyre

13

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIE EVANS, as Executor of the Estate of Marie R. Evans, <br><br> Plaintiff, <br><br> v. <br><br> LORILLARD TOBACCO COMPANY, GARBER BROS., INC., GEORGE MELHADO AND COMPANY, and FRANKLIN WHOLESALERS, INC., <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     C.A. NO. 04-11840(MLW) |

## AFFIDAVIT OF WILLIE EVANS

I, Willie Evans, hereby state the following:

1.      I am the Executor of the Estate of Marie R. Evans and the plaintiff in this action. Marie R. Evans was my mother. I make this affidavit in support of Plaintiff's Motion To Remand And For Award Of Attorney's Fees And Costs. The statements set forth herein are made on personal knowledge.

2.      I lived with my mother from March 1970 to September 1992 and then visited her approximately three times per week until her death in June 2002.

3.      My mother purchased Newport cigarettes on multiple occasions at various stores in Roxbury, including Stop & Shop, Walgreen's, Brown's Market, Tropical's and A Nubian Notion, and in Dorchester, including Star Market, Stop & Shop and Harbor Point Food Mart.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 12, 2004.

_Willie Evans_
Willie Evans

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIE EVANS, as Executor of the Estate of Marie R. Evans, <br><br> Plaintiff, <br><br> v. <br><br> LORILLARD TOBACCO COMPANY, GARBER BROS., INC., GEORGE MELHADO AND COMPANY, and FRANKLIN WHOLESALERS, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

C.A. NO. 04-11840(MLW)

## AFFIDAVIT OF LESLIE Y. ADAMSON

I, Leslie Y. Adamson, hereby state the following:

1.      I live at 45 Templeton Way, Covington, Georgia 30016. I moved here from Massachusetts in May 2003. I was born on July 15, 1952 and am currently 52 years old. This affidavit is based on personal knowledge.

2.      Plaintiff, Willie Evans, is my nephew and Marie R. Evans was my older sister. I lived with Marie until she got married in 1969. After her marriage, I saw Marie at least once a week and went shopping with her every Saturday. I continued to see Marie regularly until her death in June 2002.

3.      I witnessed Marie purchasing Newport cigarettes on many different occasions between approximately 1961 until her death in June 2002. When she was a teenager and young adult, she purchased Newport cigarettes at "Mom & Pop"-type stores such as Johnny's and Moe's, both of which were located near the Orchard Park Housing

Project in Roxbury, Massachusetts. During that period, Marie also purchased cigarettes on many occasions at Blair's Supermarket on Washington Street, near the Dudley T Station in Roxbury, at two local drugstores in Roxbury, Gerson's and Kornfield's, and at Stop & Shop in Roxbury.

4.      After her marriage, Marie lived in other communities, including Hyde Park, Randolph and Dorchester. She moved back to Roxbury in 2001 and lived there until her death. I accompanied Marie on many different shopping trips in all of those communities and witnessed her purchasing Newport cigarettes at various stores.

5.      Between approximately 1965 and 2002, Marie purchased cartons of Newport cigarettes on a frequent and regular basis from Stop & Shop Supermarkets in Hyde Park, Dorchester and Roxbury, at CVS Stores in Roxbury, Dorchester, Hyde Park, Randolph, the South Shore Plaza in Braintree, and at Wal-Mart in Avon, Massachusetts.


I declare under penalty of perjury that the foregoing is true and correct. Executed on November 5th, 2004.

_Leslie Y. Adamson_
Leslie Y. Adamson

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIE EVANS, as Executor of the Estate of Marie R. Evans, <br><br>     Plaintiff, <br><br>     v. <br><br> LORILLARD TOBACCO COMPANY, GARBER BROS., INC., GEORGE MELHADO AND COMPANY, and FRANKLIN WHOLESALERS, INC., <br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br> C.A. NO. 04-11840(MLW) |

## AFFIDAVIT OF CAROLE BROWN

I, Carole Brown, hereby state the following:

1.     I live at 325 Loch Haven Drive, Conyers, Georgia 30013. I moved here from Massachusetts in 1989. I was born on June 16, 1941 and am currently 63 years old. This affidavit is based on personal knowledge.

2.     Plaintiff, Willie Evans, is my nephew and Marie R. Evans was my younger sister. I lived with Marie until 1958. Thereafter, I saw her on a regular basis until I moved to Georgia in 1989.

3.     I witnessed Marie purchasing Newport cigarettes on many different occasions between approximately 1961 and 1989. When she was a teenager and young adult, she purchased Newport cigarettes at "Mom & Pop"-type stores such as Johnny's and Moe's, both of which were located near the Orchard Park Housing Project in

Roxbury, Massachusetts.  During that period, Marie also purchased cigarettes on many occasions at two local drugstores, Gerson's and Kornfield's.

4.    I also saw Marie purchase cigarettes at Stop & Shop in Roxbury, at CVS Stores in Roxbury and other nearby locations, at Slim's Variety Store in Roxbury, and at Walgreen's in Roxbury.


I declare under penalty of perjury that the foregoing is true and correct.  Executed on November 5, 2004.

Carole Brown

2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIE EVANS, as Executor of the Estate of Marie R. Evans, <br><br> Plaintiff, <br><br> v. <br><br> LORILLARD TOBACCO COMPANY, GARBER BROS., INC., GEORGE MELHADO AND COMPANY, and FRANKLIN WHOLESALERS, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

C.A. NO. 04-11840 (MLW)

## AFFIDAVIT OF MICHAEL D. WEISMAN, ESQ.

I, Michael D. Weisman, Esq., hereby state the following:

1.     I am co-counsel to the plaintiff in this case.  I am an attorney licensed to practice law in the Commonwealth of Massachusetts and am a member of the Boston firm of Weisman & McIntyre, a Professional Corporation.

2.     I am also co-counsel in the case of *Willie Evans, as Executor of the Estate of Marie R. Evans v. Marc L. Halper, M.D.*, SUCV 2002-0911, which is a medical malpractice action pending in Massachusetts Superior Court for Suffolk County.  That action was filed on February 29, 2002 with Marie R. Evans as the plaintiff.  After Ms. Evans died in June 2002, Willie Evans, her son and the Executor of her estate, was substituted as the plaintiff.

3.     During the course of my representation of Ms. Evans in her medical malpractice action against Dr. Halper, I learned of Ms. Evans's smoking history and discovered that she had potential, additional claims arising out of her smoking-caused

cancer. I also learned that she had smoked Newport cigarettes almost exclusively during her lifetime, beginning when she was a child. I also knew that Lorillard Tobacco Company was the manufacturer of Newport-brand cigarettes, and that its Boston-based counsel was Richard Zielinski, Esq., then of Hill & Barlow.

4.      On May 15, 2002, I called Mr. Zielinski to let him know about the potential case and to invite Lorillard to participate in Ms. Evans's then ongoing deposition in the medical malpractice case. On May 16, 2002, I spoke with Mr. Zielinski again and, on the same day, I confirmed the invitation in a letter to Mr. Zielinski. Lorillard declined to participate in the deposition.

5.      On May 17, 2002, in an additional effort to perpetuate Ms. Evans's testimony, I filed an Emergency Petition to Perpetuate Testimony pursuant to Mass.R.Civ. P. 27 in Suffolk Superior Court and served a copy of that Petition on Lorillard by sending it both by e-mail and facsimile to Mr. Zielinski. On May 17, 2002, I also provided notice to Lorillard that the Court, per Hines, J., had scheduled a hearing on the Petition. Mr. Zielinski attended the hearing on behalf of Lorillard, and Judge Hines entered an order permitting the deposition to go forward.

6.      Lorillard, represented by Mr. Zielinski, conducted discovery of Ms. Evans in late May and cross-examined her in connection with the perpetuation of her trial testimony in late May and early June 2002. Ms. Evans died less than three weeks later.

7.      As we were preparing to send demand letters to potential defendants pursuant to Chapter 93A of the Massachusetts General Laws, I asked Mr. Zielinski to provide me with the names of the entities that had distributed Lorillard's Newport cigarettes in the Roxbury, Dorchester and Hyde Park areas during the relevant time

2

period. Mr. Zielinski informed me that he did not know who the distributors were and that even if he did know who they were, Lorillard would not authorize him to release that information to me.

8.    The Newport cigarette distributors named in this action were first identified by my co-counsel in March 2004 after a time-consuming investigation.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on November 18, 2004.

Michael D. Weisman

3