UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIE EVANS, as Executor of the Estate of Marie R. Evans,<br><br>　　　　Plaintiff,<br><br>v.<br><br>LORILLARD TOBACCO COMPANY, GARBER BROS., INC., GEORGE MELHADO AND COMPANY, and FRANKLIN WHOLESALERS, INC.,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 04-11840-MLW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### LORILLARD TOBACCO COMPANY, GARBER BROS., INC., AND GEORGE MELHADO AND COMPANY'S JOINT SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Plaintiff has attempted to evade this Court's jurisdiction and prevent the defendants from exercising their statutory right to remove this case to federal court by naming the non-diverse Local Distributors. The Local Distributors have been fraudulently joined because, as exhibited by plaintiff's conduct since before this lawsuit was even filed, plaintiff does not intend to pursue a judgment against the Local Distributors. Indeed, there would be little reason to do so, as there is no suggestion that Lorillard is insolvent. Moreover, plaintiff's claims against the Local Distributors have no reasonable basis in law or fact. Although those claims fail for multiple reasons (all set forth in defendants' Joint Opposition to Plaintiff's Motion to Remand), the following key facts are dispositive:

- Plaintiff cannot identify any cigarette distributor responsible for putting Newport cigarettes in Ms. Evans's hands – that is, plaintiff cannot establish that Ms. Evans smoked Newport cigarettes distributed by the Local Distributors. See 5/28/02 Evans Depo. at 26-29; Garber Aff. ¶¶ 7-8; Alberts Aff. ¶¶ 12-13; Hettinger Aff. ¶ 2-3

Plaintiff's continued reliance on case law stating that distributors may be liable for breach of implied warranty under Massachusetts law is a red herring that dodges this fundamental threshold question. See Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 8 (D. Mass. 2001) (allowing motion to drop distributor of latex gloves as a misjoined party where the plaintiffs "failed to alleged or provide evidence that Plaintiff was ever exposed to latex gloves distributed by [the defendant distributor]").

- Plaintiff cannot establish a viable design defect claim based on either implied warranty or negligence theories because, among other things, he has not identified a unique defect in Newport cigarettes and cigarettes as a class simply are not recognized as unreasonably dangerous.

- Plaintiff cannot establish a viable pre-1969 failure to warn claim based on either implied warranty or negligence theories because, as recognized by Massachusetts state and federal courts, the dangers of smoking have been a matter of public knowledge for decades, long before Ms. Evans allegedly began smoking in the early 1960s, and the Local Distributors never possessed knowledge superior to that of the consuming public concerning the risks of smoking.

Plaintiff's Reply Memorandum offers multiple strained arguments in an effort to distract the Court from these three central facts, none of which alters the inevitable conclusion that the Local Distributors have been fraudulently joined.

### A.     Lack Of Intent To Secure A Judgment Against The Non-Diverse Defendant Is A Well-Recognized Basis For Finding Fraudulent Joinder And, Here, Plaintiff Has Shown No Interest In Pursuing The Local Distributors.

Plaintiff continues to insist that a party's intent to secure judgment against the non-diverse defendant is irrelevant to the fraudulent joinder inquiry. Reply Mem., p. 8. Notably, however, the four unpublished opinions of Judge O'Toole on which plaintiff relies, see Reply Mem. at 6, all recognize this standard:

> Alternatively, fraudulent joinder may be found if it is concluded that the plaintiff does not intend to obtain a judgment against a nondiverse defendant, so that it can be inferred that the only reason for the inclusion of that defendant is to preclude the existence of diversity jurisdiction.

Estate of Bakoian v. R.J. Reynolds Tobacco Co., C.A. No. 98-11739-GAO, slip op. at 2 (D. Mass., Aug. 18, 1999). Moreover, as noted in defendants' Joint Opposition, numerous other

federal courts and commentators have adopted this standard. Joint Opposition, at 7 n.6. The mere fact that the scant fraudulent joinder case law from Massachusetts federal courts does not include an independent finding of fraudulent joinder on this basis does not somehow render the standard void. Plaintiff offers no principled reason for the Court to disregard the fraudulent intent standard.

And, in fact, there is ample evidence that plaintiff has absolutely no interest in securing a judgment against the Local Distributors. When Defendants removed this case, there was simply no evidence in the record connecting the Local Distributors to Ms. Evans. Plaintiff's counsel asserts that his co-counsel first identified the Local Distributors in March 2004, after "a time-consuming investigation." Affidavit of Michael D. Weisman, Esq. ("Weisman Aff.") ¶ 8. By that time, however, plaintiff's counsel had been involved with Ms. Evans' case for several years and yet he offers no reason why this investigation was not conducted much earlier. In February 2002, Ms. Evans, represented by Mr. Weisman, brought a malpractice action against her former primary care physician for failure to properly diagnose her lung cancer (Evans v. Halper, M.D., Suffolk Superior Court C.A. No. 2002-00911). In May 2002, plaintiff's counsel filed an emergency petition in the Suffolk Superior Court for permission to take Ms. Evans' evidence preservation deposition in anticipation of this lawsuit. In connection with that motion, plaintiff's counsel expressly represented to the Superior Court that he intended to sue both Lorillard and local cigarette distributors. See Emergency Petition to Perpetuate Testimony Pursuant to Mass. R. Civ. P. 27, at 1 ("Ms. Evans, or more likely her Estate, may bring an action in Massachusetts against Lorillard and may join in that action one or more distributors of Newport cigarettes."), attached hereto as Exhibit A. Thus, plaintiff's counsel was already contemplating a lawsuit against local cigarette distributors by

May 2002. It is inconceivable that it would then take his office two more years to identify the Local Distributors.

In any event, one wonders how "time-consuming" the investigation could have been. Mr. Weisman's co-counsel, Rebecca McIntyre, was formerly employed as an Assistant Attorney General for the Commonwealth of Massachusetts. In that capacity, she was counsel for the Commonwealth in a lawsuit brought by the Commonwealth against several major tobacco companies as well as certain Massachusetts cigarette distributors. She was also counsel for the Commonwealth in a case brought by the major tobacco companies (including Lorillard) against the Commonwealth. Ms. McIntyre is certainly capable of identifying local cigarette distributors when necessary and could easily have contacted her sources at the Attorney General's office to obtain information regarding Lorillard's distributors in Massachusetts.

Moreover, Mr. Weisman was formerly a partner at Hill & Barlow and, by his own admission, knew that Mr. Zielinski of Hill & Barlow represented Lorillard when he sought to take Ms. Evans' preservation deposition in May 2002. Weisman Aff. ¶ 4. Therefore, Mr. Weisman must surely have known that Lorillard has been named as a defendant in numerous smoking and health cases in Massachusetts. Nothing prohibited Mr. Weisman from searching for those cases on PACER. Such a search would have revealed a number of cases dating back to 1996, including several that named distributor defendants, including some of the same distributors named in this lawsuit. Mr. Weisman implies in his affidavit that it was Lorillard's fault that he did not know who the distributors were any earlier because Mr. Zielinksi, his former law partner at Hill & Barlow, refused to reveal that information. Weisman Aff. ¶ 7. But plaintiff does not contend that Lorillard or its attorneys were ever

obligated to give this information to Mr. Weisman. Of course, they were not. And again, a sophisticated attorney such as Mr. Weisman was certainly capable of identifying the Local Distributors sooner had he truly intended to obtain a judgment against them. His failure to do so is telling.

Only now – well over two years after Ms. Evans' evidence preservation deposition – does plaintiff even attempt to plug the gaping hole in his case against the Local Distributors by submitting affidavits from three of Ms. Evans' relatives (including the plaintiff himself) who allegedly saw her purchase cigarettes at various retailers in the greater Boston area. These affidavits are highly suspect. They are nothing more than affidavits of convenience, designed, after the fact, to respond to defendants' arguments against remand. For example, in its opposition brief, Local Distributor Franklin Wholesalers, Inc. stated that it has distributed tobacco products to certain retail stores owned by The Stop & Shop Supermarket Company LLC. See Defendant Franklin Wholesalers, Inc.'s Opposition to Plaintiff's Motion to Remand and for Award of Attorneys' Fees and Costs, at 2. Not surprisingly, each of the affiants now testifies that Ms. Evans purchased Newport cigarettes from Stop & Shop and several other local retailers. Reply Mem. at 4.

Notably, however, this is the very first time in both this litigation and the earlier-filed medical malpractice action that plaintiff asserts that Ms. Evans purchased Newport cigarettes from Stop & Shop, let alone any of the other retailers identified in the affidavits of Ms. Evans' relatives:

- At her deposition in the medical malpractice action, taken on May 15 and 17, 2002, Ms. Evans did not testify that she purchased Newport cigarettes from Stop & Shop or any other retailer.

- In anticipation of this lawsuit, Ms. Evans' discovery deposition was taken on May 28, 2003 and her evidence preservation deposition was taken on May 29 and 31, 2002. She again did not testify that she purchased Newport cigarettes from Stop & Shop or any retailer other than Johnny's and Moe's – stores to which none of the Local Distributors supplied cigarettes.

- The Complaint does not even mention Stop & Shop, let alone allege that Ms. Evans purchased Newports from Stop & Shop stores or the other newly identified retailers.

- Finally, the Motion to Remand makes no mention of Stop & Shop or any of the other newly identified retailers.

Years before even filing the instant lawsuit, plaintiff's counsel was considering the possibility of suing Massachusetts cigarette distributors. With this in mind, it would have been logical to first identify the retailers from whom Ms. Evans allegedly purchased Newport cigarettes and then determine if any local distributors distributed Newport cigarettes to those retailers. Plaintiff, however, failed to do so until now, well after moving to remand.

At a minimum, plaintiff was obligated to offer these new affidavits in support of the remand motion itself, rather than waiting to do so until the very last minute in connection with a reply brief. See Local Rule 7.1(B)(1) ("Affidavits and other documents setting forth or evidencing facts on which the motion is based shall be filed with the motion."). Courts are reluctant to allow parties to raise new issues in, or submit new supporting evidence with, a reply brief. Cf. United States v. Valdez, No. 95-2282, 1997 WL 268685, at *2 (1st Cir. May 20, 1997) ("While it is within our discretion to review an issue raised for the first time in a reply brief if exceptional circumstances are shown, we find no such circumstances in this case and thus decline to exercise that discretion.") (internal citation omitted). Because plaintiff did not comply with the requirements of Local Rule 7.1(B)(1) and because a reply brief may not be

submitted without leave of court in any event, see Local Rule 7.1(B)(3), this Court has discretion to disregard the affidavits.[1]

### B. Plaintiff's Design Defect Claims Are Nothing More Than Claims That Cigarettes As A Class Are Unreasonably Dangerous.

At bottom, plaintiff's design defect claims are nothing more than a strict liability claim that all tobacco products are inherently defective. Under the Restatement (Second) of Torts § 402A, comment i, "a plaintiff attempting to demonstrate that cigarettes were defectively designed must plead that the particular tobacco used in the cigarettes consumed was, itself, 'bad'; that is, it deviated from the norm for tobacco in some untoward way." Herlihy v. R.J. Reynolds Tobacco Co., Civ. A. No. 85-3888-MA, 1988 WL 73434, at *2 (D. Mass. June 27, 1988).[2] Stated differently, to be cognizable, a defect claim must allege that "defendants'

---

[1] Interestingly, if plaintiff moved to amend the complaint after removal to add a non-diverse party that would defeat diversity, this Court would have discretion to reject that amendment in light of several factors, including plaintiff's underlying motive. See 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder . . . ."); Sorosky v. Burroughs Corp., 826 F.2d 794, 804-05 (9th Cir. 1987) (attempting to add a non-diverse party merely to defeat diversity is a bad faith motive and a proper ground for denying leave to amend). This would be true notwithstanding whether the plaintiff technically could amend as of right under Fed. R. Civ. P. 15(a). See Mayes v. Rapoport, 198 F.3d 457, 462 n.11 (4th Cir. 1999); Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1488 (10th Cir. 1991). Indeed, it would be ironic if plaintiff could effectively amend the complaint to add allegations about Stop & Shop by submitting late-filed affidavits and thus avoid this Court's discretionary review of an attempt to file an amended complaint.

Plaintiff's gambit here is reminiscent of efforts by plaintiffs to manufacture issues of material fact to survive summary judgment through affidavits that contradict prior deposition testimony. Courts routinely disregard such post-hoc affidavits. See, e.g., Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999) ("[Lower courts] have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining that contradiction or attempting to resolve the disparity."); Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory . . . ."). In Colantuoni, the First Circuit disregarded the plaintiff's post-hoc contradictory affidavit, noting: "we think it significant that the affidavit was offered only after defendants had filed motions for summary judgment." 44 F.3d at 5. The same concern holds true here.

[2] Plaintiff's suggestion that the Restatement (Third) of Torts § 2, cmt. d (1998) applies to this case is misleading. Plaintiff has cited no authority, and defendants are aware of none, holding that the Restatement (Third) of Torts § 2, cmt. d has been adopted by Massachusetts courts or the First Circuit. By contrast, Massachusetts courts have clearly endorsed the Restatement (Second) of Torts § 402A , see Back v. Wickes

cigarettes were adulterated by some substance a reasonable consumer would not expect to find in cigarette products." Viola v. American Brands, Inc., Civ. A. No. 85-2496-WD, 1989 WL 234525, at *1 (D. Mass. July 14, 1989).

Plaintiff contends that he has sufficiently pled design defect claims against the Local Distributors by alleging that "the Newport cigarettes . . . sold and distributed by defendants . . . were carcinogenic, addictive, and contained dangerous levels of tar, nicotine and other substances." Reply Mem. at 5 (quoting Complaint ¶ 60). But, plaintiff has not alleged that Newport cigarettes were defectively designed in such a way as to be <u>especially</u> carcinogenic and addictive; rather, plaintiff is simply asserting that Newport cigarettes, by virtue of being a tobacco-containing product like all other cigarettes, are carcinogenic and addictive. There is no allegation that the carcinogenic and addictive qualities common to cigarettes as a product class were somehow enhanced in Newport cigarettes or that Newport cigarettes were adulterated or contaminated in any way.

Plaintiff's reliance on Judge O'Toole's unpublished opinions in Estate of Bakoian (and its companion cases) is equally unavailing. In those cases, Judge O'Toole admittedly found fairly bare-bone allegations sufficient to state reasonable design defect claims in the face of a fraudulent joinder argument. Just a few months later, however, in Varney v. R.J. Reynolds Tobacco Co., 118 F. Supp. 2d 63 (D. Mass. 2000), Judge O'Toole dismissed a complaint, filed by the same attorney who brought Estate of Bakoian, which was largely identical to the complaint in that case. In Varney, Judge O'Toole found that the plaintiff had failed to identify

---

Corp., 375 Mass. 633, 640 (1978) (stating that Massachusetts warranty law is "congruent in nearly all respects with the principles expressed in Restatement (Second) of Torts § 402A (1965)."), and specifically follow the reasoning of comment i. See, e.g., Commonwealth v. Johnson Insulation, 425 Mass. 650, 660 (1997).

a "unique feature of design" that rendered the cigarettes at issue more dangerous than cigarettes as a class. Id. at 70. Defendants submit that Varney, a later, published decision, which analyzed a design defect claim under the indulgent standard of Fed. R. Civ. 12(b)(6) – arguably more favorable to plaintiff than the summary-judgment-like fraudulent joinder standard – offers the better approach for dealing with the design defect claims here.

### C. This Court May Properly Take Judicial Notice That The Health Risks Of Cigarette Smoking Have Been A Matter Of Common Knowledge Since Well Before Ms. Evans Began Smoking.

Plaintiff takes certain language from Wolf v. Philip Morris Inc., No. 99-1260-B, slip op. (Mass. Super. Ct. June 22, 2000) ) (attached to defendants' Joint Opposition as Exhibit G) out of context to argue that this Court should not take judicial notice of when the health risks of smoking became commonly known. Plaintiff cites the following language from Wolf:

> This Court is aware that several courts have concluded that whether the health risks of cigarette smoking were commonly known to consumers prior to the advent of the Surgeon General's report in 1966 is a factual question to be determined by a jury, and not a matter susceptible to judicial notice.

Id. at 6. But he neglects to point out that the court went on to reject that position and take judicial notice as to common knowledge, citing multiple contrary authorities, including the United States Supreme Court's landmark decision in Cipollone v. Liggett Group, Inc., 505 U.S. 504 (1992). Id. at 7. The court concluded:

> However, this court believes that the better reasoned decisions are those which conclude, as a matter of law, that the dangers of smoking have long been common knowledge. . . . This court will take judicial notice of the fact that the smoking of cigarettes poses serious health risks, including the risk of addiction, and that such risks have been generally known and recognized by the public as far back as the 1930's, when the plaintiff Wolf began smoking.

Id. at 8 (internal citations omitted).

The dangers of cigarette smoking have been common knowledge for decades, certainly since well before Ms. Evans allegedly began smoking in the early 1960s. As numerous courts have recognized, there is no dispute on this point and it is thus an entirely proper subject for judicial notice. See Fed. R. Evid. 201 ("A judicially noticed fact must be one not subject to reasonable dispute . . . .").[3]

### D. Plaintiff's Argument Regarding The Fraudulent Joinder Standard Is Simply An Exercise In Semantics Designed To Mask The Fact There Is No Reasonable Basis For Plaintiff's Claims Against The Local Distributors.

Fraudulent joinder exists where the plaintiff has no reasonable basis for a claim against the defendant. Plaintiff contends that defendants must show "that the plaintiff does not have even a possibility of stating a valid claim against the non-diverse defendants." Reply Mem. at 2 (emphasis added). The cases cited by plaintiff do contain "no possibility" language. The Fifth Circuit, however, recently explained that the "no possibility" language, which the Fifth Circuit itself used in certain of its decisions, cannot be taken literally; "no possibility" means "no reasonable possibility." Ross v. CitiFinancial, Inc., 344 F.3d 458, 462 (5th Cir. 2003). This District Court has similarly held that the "no possibility" standard boils down to a question of reasonableness: "the linchpin of fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact." Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 4 (D. Mass. 2001) (emphasis added); see also In re

---

[3] To the extent plaintiff suggests that the Court cannot find common knowledge as to addiction based upon CEO testimony before Congress, he is incorrect. Such an argument is a red herring; it is not what the defendant manufacturer says, but what the ordinary consumer thinks, that determines common knowledge. See, e.g., White v. R.J. Reynolds Tobacco Co., 109 F. Supp. 2d 424, 432-33 (D. Md. 2000) (ruling that dangers of smoking were commonly known since the 1950's and explaining that existence of information from tobacco manufacturers "downplaying the dangers of smoking does not undermine the conclusion that any ordinary consumer would still have contemplated those dangers"). The cases cited by the defendants show that the public has long been aware of the risks of smoking, including addiction, and this Court can take judicial notice of that fact. Moreover, the testimony referenced by plaintiff constitutes public speech protected by the First Amendment.

Massachusetts Diet Drug Litig., 338 F. Supp. 2d 198, 202 (D. Mass. 2004) ("[In analyzing a claim of fraudulent joinder], I must determine whether there is an objectively reasonable basis for the claims . . . .") (emphasis added); Carey v. Board of Governors of the Kernwood Country Club, 337 F. Supp. 2d 339, 341-42 (D. Mass. 2004) (same); In re New England Mut. Life Ins. Co. Sales Practices Litig., 324 F. Supp. 2d 288, 298 (D. Mass. 2004) (quoting Mills). Thus, "[a] mere theoretical possibility of recovery under state law does not suffice to preclude removal." Mills, 178 F. Supp. 2d at 5. Numerous Courts of Appeals have applied the "no reasonable basis" standard.[4]

Accordingly, to establish fraudulent joinder, defendants must show that there is no reasonable basis for plaintiff's claims against the Local Distributors; they are not required to eliminate each and every hypothetical possibility whereby plaintiff might prevail on those claims. Otherwise, no action would ever be removable under the fraudulent joinder doctrine because it is always at least theoretically or remotely possible (or even "plausible" to use plaintiff's preferred language) that a claim might be upheld. In the instant case, there is hardly a hypothetical, much less a reasonable, basis for plaintiff's claims against the Local Distributors.

---

[4] See, e.g., Ross v. CitiFinancial, Inc., 344 F.2d 458, 462 (5th Cir. 2003) ("[T]here must be a reasonable possibility of recovery, not merely a theoretical one.") (emphasis added); Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003) ("[T]here is a common thread in the legal fabric guiding fraudulent joinder review. It is reason. Thus, a proper review should give paramount consideration to the reasonableness of the basis underlying the state claim."); Schwartz v. State Farm Mut. Auto. Ins. Co., 174 F.3d 875, 879 (7th Cir. 1999) ("We only hold that [plaintiffs' chance of prevailing against nondiverse defendant] is not a reasonable possibility based on current Indiana law and the facts before us. Therefore the joinder was fraudulent . . . .") (citation omitted); Alexander v. Electronic Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994) ("The question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved.") (citation omitted); Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant. . . .") (internal quotations and citation omitted), cert. denied, 498 U.S. 1085 (1991); see also 16 Moore's Federal Practice § 107.14[2][c][iv][B], p. 107-62.1 (3d ed. 2004) ("[T]he court must determine whether there is any reasonable basis for predicting that the plaintiff might be able to establish the nondiverse defendant's liability on the pleaded claims in state court.") (emphasis added).

### E. Contrary To Plaintiff's Assertion, It Is Well-Settled That Courts May Properly Consider Evidence Beyond The Pleadings In Determining Whether Fraudulent Joinder Exists.

Plaintiff further attempts to confuse the fraudulent joinder standard by contending that this Court should not consider matters outside the pleadings, such as the affidavits submitted by the Local Distributors, in ruling on the Motion to Remand. Reply Mem. at 2. n.1. It is well-established, however, that "in ruling on fraudulent joinder, a court may pierce the pleadings." 16 Moore's Federal Practice § 107.14[2][c], p. 107-62.1 (3d ed. 2004). Although the First Circuit has not addressed the issue, Judges O'Toole and Saris of this Court have both noted (in cases cited by plaintiff) that it is entirely proper to consider evidence outside the pleadings in the fraudulent joinder context. See In re Massachusetts Diet Drug Litig., 338 F. Supp. 2d at 202 ("To determine whether a party has been fraudulently joined to defeat diversity jurisdiction, a court starts with the parties' pleadings but may also consider summary judgment type evidence, such as affidavits, transcripts, and exhibits."); Mills, 178 F. Supp. 2d at 5-6 ("In analyzing a claim of fraudulent joinder, a court is not held captive by the allegations in the complaint. . . . The Court may also examine affidavits of the parties in determining the propriety of joinder."). Once again, this position is consistent with that of other federal

courts.[5] Plaintiff's position is thus out of line with that recognized by this Court as well as the weight of relevant authority.[6]

### F.     Plaintiff Misapplies The Common Defense Rule.

Next, plaintiff appears to be arguing that defendants' fraudulent joinder argument is barred by the so-called "common defense rule." Reply Mem. at 7. The common defense rule is inapplicable here. The mere fact that plaintiff's implied warranty, negligence, and Chapter 93 claims against the Local Distributors and Lorillard fail for the same reasons is irrelevant. The common defense rule applies "when a nonresident defendant's showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant <u>equally disposes of all defendants</u> . . . ." <u>Smallwood v. Illinois Cent. R.R. Co.</u>, 385 F.3d 568, 571 (5th Cir. 2004) (emphasis added) (rejecting fraudulent joinder argument where Federal Railroad Safety Act preemption defense disposed of the entire case against both the non-diverse defendant and the diverse defendant).[7]

---

[5] <u>See</u>, <u>e.g.</u>, <u>Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 311 (5th Cir. 2002) ("To decide whether a defendant has been fraudulently joined, the district court can employ a summary-judgment like procedure that allows it to pierce the pleadings and examine affidavits and deposition testimony . . . ."); <u>United Food & Commercial Workers Union, AFL-CIO v. Centermark Props. Meriden Square, Inc.</u>, 30 F.3d 298, 305 (2d Cir. 1994) (when considering jurisdictional issues, "federal courts may look outside the pleadings to other evidence in the record"); <u>Chamberlain v. American Tobacco Co.</u>, 70 F. Supp. 2d 788, 792 (N.D. Ohio 1997) ("[W]hile the determination as to the propriety of removal is based upon the plaintiff's pleadings at the time of removal, the court may pierce the pleadings and consider 'summary judgment-type' evidence such as affidavits and deposition testimony in determining whether the standard for fraudulent joinder has been met.").

[6] Plaintiff argues that defendants are applying an overly strict, summary judgment standard in analyzing the sufficiency of the claims against the Local Distributors. But, as stated in the cases cited above, the fraudulent joinder inquiry does involve a summary-judgment type procedure to the extent that matters outside the pleadings may be considered by the court in conducting a thorough inquiry into its own jurisdiction. In any event, the distinction is academic. The fact remains that the claims against the Local Defendants are not even "colorable" – must less sufficient to survive a motion for summary judgment.

[7] The opinion cited by plaintiff, <u>In re New England Mut. Life Ins. Co. Sales Pracs. Litig.</u>, 324 F. Supp. 2d 288 (D. Mass 2004), purportedly relies on earlier decisions in the <u>Smallwood</u> case for its analysis of the common defense rule. <u>Id.</u> at 298-304. But, it misconstrues those cases by suggesting that the rule would apply regardless of whether one claim or the whole case were disposed of by the common defense. <u>Id.</u> at 305-06 ("The arguments offered to prove fraudulent joinder do not show that no case can be made against the diverse defendant. But, for the following reasons, I conclude that the difference is irrelevant."). This statement is incorrect. The

Here, a finding that there is no reasonable basis for plaintiff's claims against the Local Distributors simply would not dispose of the <u>entire case</u> as to Lorillard. Several claims against Lorillard would survive such a finding, *e.g.*, voluntary undertaking of a duty (Count II) and public nuisance (Count IV). Accordingly, the common defense rule is inapplicable.[8]

### G.  There Is No Basis For Imposing Sanctions On Defendants.

Plaintiff's argument that he is entitled to attorneys' fees and costs warrants little by way of response beyond the points made in defendants' Joint Opposition. In short, defendants have not ignored Massachusetts law stating that distributors can be liable for breach of implied warranty – that principle is not even at issue here because plaintiff cannot establish the threshold requirement of identification. Second, defendants have not "ignored" the so-called "unfavorable cases" from Judge O'Toole; rather, defendants addressed those cases directly, <u>see</u> Joint Opposition at 12 n.9, and provided affidavits from the Local Distributors containing precisely the sort of market information regarding geographic distribution that Judge O'Toole found lacking in the cases before him. Third, what plaintiff describes as efforts by defendants to "pad" their brief with supposedly irrelevant arguments about preemption and retroactive application of Chapter 93A was, in reality, nothing more than responsible advocacy by defendants' counsel in the face of an ambiguous complaint that left doubt as to the temporal scope of plaintiff's failure to warn claims. Fifth, the fact that plaintiff's counsel purportedly

---

Fifth Circuit recently clarified its holding in <u>Smallwood</u> and confirmed that the common defense rule only applies when the common defense disposes of the entire case as to all defendants. <u>See</u> <u>Rainwater v. Lamar Life Ins. Co.</u>, No. 03-60283, 2004 WL 2601137, at *2 (5th Cir. 2004) ("This case turns . . . on whether the limitations defense that disposes of all claims against the in-state defendants in fact disposes of all claims against all defendants, as the principle of <u>Smallwood</u> is triggered only when all defendants are reached.")

[8] Several of defendants' fraudulent joinder arguments are unique to the Local Distributors. Lack of identification, by definition, applies only to the Local Distributors. Also unique to the Local Distributors is the superior knowledge defense - that the Local Distributors lacked superior knowledge to that of the consuming public concerning the risks of smoking, thus negating any duty to warn Ms. Evans of those dangers prior to 1969.

did not identify the Local Distributors until March 2004 is simply no excuse, as noted above, for failing to do so earlier. Had plaintiff's counsel performed a diligent and timely investigation, he could have been in a position to afford the Local Distributors an opportunity (to which they were entitled) to attend Ms. Evans' evidence preservation deposition. The failure to do so was highly prejudicial to the Local Distributors, and strongly suggests that they were sued solely as a ploy to defeat this Court's jurisdiction.

Moreover, recent experience with smoking and health cases in Massachusetts illustrates that remand under the facts presented here is hardly a foregone conclusion as plaintiff would have this Court believe. Indeed, in three other recent Massachusetts smoking and health cases, defendants removed the cases to this Court, and plaintiffs in all three cases declined to even move to remand. See Notice of Removal at 3. And, numerous smoking and health cases throughout the country have been successfully removed on the basis of fraudulent joinder. See id. at 3-4 n.2. Supported by this track record, the decision to remove this case hardly constitutes "clear disregard of the applicable standards" for removal. Sanctions under 28 U.S.C. § 1447(c) would be inappropriate.

LORILLARD TOBACCO COMPANY,

By its attorneys,

_____
Andrew J. McElaney, Jr. (BBO# 332260)
Scott E. Erlich (BBO# 637202)
Timothy D. Johnston (BBO# 647894)
Nutter, McClennen & Fish, LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2000

and

Gay L. Tedder
Bruce R. Tepikian
Suzanne M. Teeven
Shook, Hardy & Bacon LLP
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550

GEORGE MELHADO AND COMPANY,

By its attorneys,

/s/ Andrew J. McElaney
Andrew J. McElaney, Jr. (BBO# 332260)
Scott E. Erlich (BBO# 637202)
Timothy D. Johnston (BBO# 647894)
Nutter, McClennen & Fish, LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2000

GARBER BROS., INC.,

By its attorneys,

/s/ Andrew J. McElaney
Andrew J. McElaney, Jr. (BBO# 332260)
Scott E. Erlich (BBO# 637202)
Timothy D. Johnston (BBO# 647894)
Nutter, McClennen & Fish, LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2000

Dated: December 23, 2004

### CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand

Date: 12/23/04    /s/ S. Erlich

- 16 -